**In the Matter of the Workers' Compensation Case of Susan Y. JOHNSON, Surviving Spouse of Stephen R. Johnson, individually and on behalf of Kimberley Johnson and Shirley Johnson, minor children, Appellants (Petitioners),**

v.

**STATE of Wyoming, ex rel. Wyoming Workers' Compensation Division, Appellee (Respondent).**

No. 95–125.

Supreme Court of Wyoming.

Feb. 22, 1996.

C. John Cotton of Wolfe and Cotton, L.L.C., Gillette, for Appellants.

William U. Hill, Attorney General; John W. Renneisen, Deputy Attorney General; and Jennifer A. Evans, Assistant Attorney General, Cheyenne, for Appellee.

Before THOMAS, MACY, TAYLOR and LEHMAN, JJ., and ROGERS, District Judge.

ROGERS, District Judge.

The hearing examiner denied Appellant Susan Y. Johnson's claim for worker's compensation benefits on behalf of herself and her two minor children. Appellants filed a petition for review of the hearing examiner's decision with the district court, and that court certified the case to the Wyoming Supreme Court pursuant to WYO.R.APP.P. 12.09(b).

We affirm the hearing examiner's decision.

## ISSUES

In their brief, Appellants present this statement of the issues:

A. Can the Division meet its burden of proof regarding intoxication through reliance on evidence which does not meet the required "reasonable degree of medical probability standard" and which is elicited from an expert who has already testified that he is not able to express an opinion and admits that he is not qualified to do so?

B. Can the OAH improperly shift the burden of proof on intoxication to the employee by making lack of intoxication a part of the employee's burden on scope of employment, when the undisputed facts and applicable law demonstrate that the employee was within the scope of employment?

C. Was blood sample evidence admitted and relied upon in violation of statutory and constitutional requirements?

Appellee Wyoming Workers' Compensation Division (Division) states the issues as follows:

A. Whether the hearing examiner's determination that the employee's death did not arise out of and in the course of his employment is supported by substantial evidence and in accordance with law.

B. Whether blood samples taken by the county coroner, without the knowledge and consent of the deceased's family, were properly admitted as evidence in the contested case proceeding.

C. Whether the record contains substantial evidence to support the hearing examiner's determination that employee was intoxicated at the time of his accident and that employee's intoxication caused his accident and death.

D. Whether the record contains substantial evidence to support the hearing examiner's determination that employee's culpable negligence was the sole cause of his accident and death.

## FACTS

The decedent, Steven R. Johnson (Johnson), lived in Gillette and was employed as a

Senior Public Defender with the State of Wyoming, Public Defender's Office. At approximately 1:30 p.m. on June 2, 1994, Johnson left his home in Gillette to travel to the annual public defender seminar in Saratoga. Prior to embarking on his trip, Johnson purchased food, camping supplies, a case of beer and a fifth of schnapps. Johnson arrived in Encampment some time before 9:00 p.m. on June 2, 1994 and shortly after 9:00 p.m. phoned his wife, Appellant Susan Johnson, to inform her that he had arrived safely.

At approximately 12:30 a.m. on June 3, 1994, Johnson's vehicle and body were discovered on Highway 70 approximately .3 of a mile south of Encampment and .2 of a mile south of the turnoff to a campground where Mr. Johnson's belongings were found at a campsite he had established. The entrance to the campground was between the accident site and Encampment.

An investigation revealed that Johnson's vehicle had crossed the center line and had gone off the left edge of the highway, then returned to the roadway, over-corrected to the left, causing the vehicle to roll up to three times. The vehicle came to rest upright. Johnson was ejected from the vehicle during the accident and either the vehicle or one of its tires rolled over his chest. Johnson's body was found lying face down in the roadway near his vehicle, his body was cold, his color was pale to bluish and blood from abrasions on his hand was dry. Johnson was taken by ambulance to the Carbon County Hospital in Rawlins, where he was pronounced dead by Dr. Young, an emergency room physician, at approximately 2:45 a.m. on June 3, 1994.

At approximately 4:00 a.m. on June 3, 1994, the Carbon County Coroner, Curtis Rostad, drew a blood sample from Johnson's jugular vein. Coroner Rostad took two tubes of blood using a State of Wyoming Chemical Testing Program Blood Alcohol Analysis kit. The blood samples were obtained without the knowledge or consent of Johnson's family, and the samples were not obtained at the request or direction of a peace officer. No autopsy was performed on Johnson. A subsequent chemical analysis of Johnson's blood by the Wyoming Chemical Testing Program revealed a blood alcohol concentration of .23 percent.

A contested hearing was held before the Office of Administrative Hearings. The hearing examiner found that Johnson was not acting within the course and scope of his employment at the time of his accident and death; Johnson's accident and death were proximately caused by intoxication; and Johnson's accident and death do not fit the definition of "injury" as set forth in Wyo. Stat. § 27–14–102(a)(xii) because of his ingestion of alcohol to a point of intoxication and his choice to drive a vehicle in that condition, which constituted culpable negligence. The hearing examiner, therefore, denied Appellants' request for worker's compensation death benefits. Appellants petitioned for review by the district court and the district court certified the matter to this court.

## STANDARD OF REVIEW

Wyo.R.App.P. 12.09 provides that a judicial review of administrative decisions is limited to a determination of the matters which are specified in Wyo.Stat. § 16–3–114(c)(ii) (1990), which provides in pertinent part:

(c) ... [T]he reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record or those parts of it cited by a party and due account shall be taken of the rule of prejudicial error. The reviewing court shall:

. . . . .

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

. . . . .

(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

██ Whether an employee's injury occurred in the course of his employment, and whether an employee's injury was caused by his intoxication or culpable negligence are questions of fact. *Latimer v. Rissler & McMurry Co.,* 902 P.2d 706, 708 (Wyo.1995); *Hepp v. State ex rel. Wyoming Workers' Comp.Div.,* 881 P.2d 1076, 1077 (Wyo.1994). We review an administrative agency's findings of fact by applying the substantial evidence standard. Wyo.Stat. § 16–3–114(c)(ii)(E) (1990). This court is required to examine the entire record to determine whether substantial evidence supported the hearing examiners's findings. *Romero v. Davy McKee Corp.,* 854 P.2d 59, 61 (Wyo. 1993). We will not substitute our judgment for that of the hearing examiner when substantial evidence supports his decision. *Bearden v. State ex rel. Wyo. Workers' Comp.,* 868 P.2d 268, 269 (Wyo.1994). Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. *Jackson v. J.W. Williams, Inc.,* 886 P.2d 601, 603 (Wyo.1994).

### DISCUSSION

### 1. BURDEN OF PROOF

██ A claimant in a worker's compensation case has the burden of proof and, unless a statute dictates otherwise, the claimant has the burden of establishing every essential element of his claim by a preponderance of the evidence. *Alco of Wyoming v. Baker,* 651 P.2d 266, 267 (Wyo.1982). The burden is upon a worker's compensation claimant to prove that he is entitled to an award of compensation. *Gifford v. Cook–McCann Concrete, Inc.,* 526 P.2d 1197, 1199 (Wyo. 1974).

In this case Appellants had the burden of proof by a preponderance of the evidence that the decedent suffered an injury which was compensable by the Workers' Compensation Division. "Injury" is defined as being

any harmful change in the human organism other than normal aging and includes damage to or loss of any artificial replacement and death, arising out of and in the course of employment while at work in or about the premises occupied, used or con-

trolled by the employer and incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extra-hazardous duties incident to the business.

Wyo.Stat. § 27–14–102(a)(xi) (1991).

"Injury" does not include:

(B) Injury caused by:

(I) The fact the employee is intoxicated or under the influence of a controlled substance, or both, except any prescribed drug taken as directed by an authorized health care provider; or

. . . .

(C) Injury due solely to the culpable negligence of the injured employee; . . . .

Wyo.Stat. § 27–14–102(a)(xi) (1991).

### 2. STANDARD FOR MEDICAL EVIDENCE

██ Appellants challenge the admissibility of the testimony of Dr. Goldstein, a toxicologist, called as an expert witness on behalf of the Division, whose testimony was admitted by the hearing examiner. Appellants contend that Dr. Goldstein's opinions were not stated to a "reasonable degree of medical probability" in accordance with *Hashimoto v. Marathon Pipe Line Co.,* 767 P.2d 158, 161 (Wyo.1989). In *Hashimoto* the trial court instructed the jury that damages must be susceptible of ascertainment with "a reasonable degree of certainty" to be recoverable. This instruction was challenged on appeal. We found the instruction to be in error in that it imposed a standard of proof which was too high, but we further held that Hashimoto did not demonstrate prejudicial error in that he was awarded damages by the jury. *Hashimoto,* 767 P.2d at 166–67.

In *Hashimoto* the appellant challenged the jury instruction which imposed a burden of proof on damages to a "reasonable certainty" and thus a higher standard. There was a lengthy discussion by this court of the use of the terms "reasonable certainty" and "reasonable probability." We held that "reasonable certainty" connotes freedom from doubt, and we further said:

Since none of us can see into the future, it appears quite illogical to attach such a

standard [reasonable certainty] to proving future pain and suffering in a personal injury case. The law is encumbered by human infirmities and thus should not reflect a standard that can only be met by a mind reader. Therefore, we find error in the standard of proof [reasonable certainty] utilized in the jury instructions. . . .

*Hashimoto,* 767 P.2d at 167. In the case presently before this court, Appellants are challenging the medical proof as having fallen below the standard of "reasonable probability."

An examination of the record reflects that Dr. Goldstein did not state his opinions to a "reasonable probability." Dr. Goldstein did state: "I believe that I do have a reasonable clinical basis for my opinion, and I would be happy to elaborate on it." Counsel for Appellants objected to this testimony on the basis that the witness did not have sufficient expertise, that the evidence was improper, without foundation and should be stricken. No mention was made in the objection of the fact that the opinion was not stated to a reasonable degree of medical probability.

Dr. Goldstein was not talking about damages for future pain and suffering in a personal injury case. He was stating his opinion as to the cause of death and when the death was likely to have occurred in the sequence of events. While Dr. Goldstein did not use the specific terminology that his opinion was to a degree of "reasonable probability," the fact that he stated that there was a "reasonable clinical basis" for his opinion was sufficient foundation for the admissibility of the opinion which was received by the hearing examiner.

■ We therefore reject Appellants argument that the Division had failed to meet its burden of proof regarding intoxication through reliance on evidence which was not stated to a reasonable degree of medical probability standard. We hold that so long as there is a sufficient foundation for medical testimony regarding cause of death, extent of injuries and the like, that the witness is not required to use the words "reasonable probability" in stating the opinion. We do not, however, depart from our holding in *Hashimoto* that future pain and suffering in personal injury cases must be proven to a "reasonable probability."

### 3. BLOOD SAMPLE EVIDENCE

■ The hearing examiner found that a chemist completed two different blood alcohol analyses of part of the sample of Johnson's blood using a gas chromatograph method of analysis. The tests revealed conclusively that the blood alcohol sample from Johnson's body had an average alcohol concentration of 0.23 percent ethyl alcohol.

County coroners are elected officials in the state of Wyoming whose duties are prescribed by statute. A "coroner's case" is a case involving a death which may involve any of the following conditions:

(A) Violent or criminal action;

. . . .

(C) Accident;

(D) Apparent drug or chemical overdose or toxicity;

(E) The deceased was unattended or had not seen a physician within six (6) months prior to death;

. . . .

(H) If the cause is unknown.

WYO.STAT. § 7–4–104 (1995).

A county coroner becomes involved in a case:

(a) When any person is found dead and the death appears to have occurred under circumstances indicating the death is a coroner's case, the person who discovers the death shall report it immediately to law enforcement authorities who shall in turn notify the coroner. . . .

(b) When the coroner is notified that the dead body of any person has been found within the limits of the county or that the death resulted from injury sustained within the county and he suspects that the death is a coroner's case, he shall conduct an investigation which may include:

(i) An examination of the body and an investigation into the medical history of the case;

(ii) The appointment of a qualified physician to assist in determining the cause of death;

(iii) An autopsy if the physician appointed to assist the coroner under this subsection determines an autopsy is necessary;

(iv) An inquest; or

(v) Any other reasonable procedure which may be necessary to determine the cause of death.

. . . .

(f) Notwithstanding any other provision of law to the contrary, the coroner may inspect medical and psychological data relating to the person whose death is being investigated if the coroner determines the information is relevant and necessary to the investigation.

WYO.STAT. § 7-4-201 (1995). This statute gives the coroner broad authority in investigating deaths which properly come under his purview.

In this case Johnson died a violent death which appeared to be an accident. It was by definition a "coroner's case." Under such circumstances the coroner was mandated by statute to conduct an investigation which included an examination of the body and other reasonable procedures which may be necessary to determine the cause of death.

The coroner was completely within his statutory duties and authority in this case in withdrawing blood samples from the decedent's body. Permission was not required of anyone for the coroner to conduct the taking of such samples. Under the circumstances of this case, the coroner would have been remiss if he had not done so. The coroner had a routine practice of taking blood samples from all individuals who die in motor vehicle accidents. This is a commendable procedure which is helpful in determining whether or not alcohol or drugs are involved in such deaths.

### 4. APPLICABILITY OF IMPLIED CONSENT STATUTE

 Dr. Goldstein further testified at the hearing that based on the evidence he had reviewed, there was a proper and complete chain of custody for the blood sample taken from Mr. Johnson on June 3, 1994. There is no evidence in the record to dispute this nor is there any indication in the record that tests were not properly performed and that the blood alcohol content of Johnson's blood at the time of his death was not 0.23 percent.

Appellants contend that the implied consent statute precludes the use of evidence of Johnson's blood alcohol concentration in this worker's compensation proceeding. The implied consent statute provides in part:

(a) If arrested for an offense as defined by W.S. 31-5-233 [driving while under the influence]:

(i) Any person who drives or is in actual physical control of a motor vehicle upon a public street or highway in this state is deemed to have given consent, subject to the provisions of this act, to a chemical test or tests of his blood, breath or urine for the purpose of determining the alcohol concentration or controlled substance content of his blood. The test or tests shall be:

(A) Incidental to a lawful arrest;

. . . .

WYO.STAT. § 31-6-102 (1994).

Johnson had not been arrested for driving while under the influence and the test was not taken incidental to a lawful arrest. By its own terms, the implied consent statute cannot apply to this case.

### 5. INTOXICATION

 In Wyoming it is an affirmative defense to a claim for worker's compensation benefits that the employee's injury was caused by intoxication. WYO.STAT. § 27-14-102(a)(xi)(B)(I) (1991 & Cum.Supp.1995). In other states when intoxication is a defense to a claim for worker's compensation benefits, the burden of proof is on the employer or the division to prove that the intoxication was the cause of the employee's injury. See *Estate of Mitchum v. Triple S Trucking*, 113 N.M. 85, 89, 823 P.2d 327, 331 (Ct.App.1991), *cert. denied*, 113 N.M. 16, 820 P.2d 1330 (1991); *Salazar v. City of Santa Fe*, 102 N.M. 172, 178, 692 P.2d 1321, 1327 (Ct.App.1983), *cert. quashed*, 102 N.M. 225, 693 P.2d 591 (1985);

*Hatley v. Lewiston Grain Growers, Inc.*, 97 Idaho 719, 722, 552 P.2d 482, 485 (1976); *Kindel v. Ferco Rental, Inc.*, 258 Kan. 272, 899 P.2d 1058, 1067 (1995). We hold that in the state of Wyoming the burden is on the employer or the Division to prove that the employee's injury was caused by intoxication. We have previously defined legal causation as:

> [T]hat conduct which is a substantial factor in bringing about the injuries identified in the complaint.

*Allmaras v. Mudge*, 820 P.2d 533, 542 (Wyo. 1991) (quoting *Buckley v. Bell*, 703 P.2d 1089, 1091–1092 (Wyo.1985)).

Appellants argue that there was not sufficient evidence for the hearing examiner to conclude that Johnson was intoxicated and that his intoxication caused his injury. Appellants argue that the exact time of death was not established; death occurred sometime between 9:06 p.m. and 12:30 a.m. when Johnson's body was found on the highway; Johnson could have consumed most of the alcohol shortly before the wreck occurred; Johnson did not die immediately in the wreck; and his blood alcohol level increased substantially after the wreck but before his death.

Dr. Goldstein testified that the blood alcohol test result of 0.23 percent accurately reflected Johnson's blood alcohol level at the time of his accident. Dr. Goldstein reached that conclusion after thoroughly considering the possibility of delay between Johnson's accident and his death and the delay between his death and the drawing of the blood sample. Dr. Goldstein concluded that Johnson died instantly or nearly instantly following the accident and the delay between the time of his death and the blood sampling had no appreciable effect on the accuracy of the blood alcohol content. Dr. Goldstein further testified that details about the appearance of the body at the scene of the accident, the lack of extensive bleeding, no indication of agonal events, and no appearance of any attempt to move on the part of Johnson led to the conclusion that Johnson basically hit the road and remained in that position until found and that death was likely to have been instantaneous or nearly so from the time of the accident.

There is substantial evidence in the record to show that Johnson left Gillette with a case of beer and a fifth of schnapps. Nine cans of beer and one-third of a "fifth" sized bottle of schnapps were unaccounted for after the accident. Highway Patrolman Jones who investigated the accident testified that, in his opinion, alcohol played a major part in Johnson's accident. This opinion was based upon Jones' experience with accidents, upon the road conditions, upon the lack of evidence that Johnson took evasive actions to avoid an object in the road, and upon the blood alcohol test results.

We have held that the finder of fact is in the best position to judge the weight to be given to the medical evidence. *Padilla v. Lovern's, Inc.*, 883 P.2d 351, 355 (Wyo.1994). Even though there may have been a conflict in the testimony between Dr. Goldstein, the toxicologist, and Dr. Young, the emergency room physician, with regard to the time of death and other issues in this case, the hearing examiner accepted the testimony of Dr. Goldstein. This court will not substitute its judgment for that of the hearing examiner as far as the credibility of witnesses is concerned.

The hearing examiner's conclusion that Johnson's injury was caused by intoxication is supported by substantial evidence.

■ Appellants argue that in this case, the burden of proof on intoxication was shifted to the employee [Appellants] by making him [them] prove lack of intoxication. In *Casper Iron & Metal v. Unemp. Ins. Comm'n*, 845 P.2d 387, 393 (Wyo.1993), we held that burden of proof, as part of the substantive law of evidence, is complex and often confusing, citing 1 D. Louisell & C. Mueller, *Federal Evidence* § 65 (1977). In *Casper Iron* we further said:

> The general term, burden of proof, identifies two separate legal doctrines: the burden of persuasion; and the burden of production, also termed the burden of producing evidence or the burden of going forward with the evidence. Louisell & Mueller, *supra,* § 66. The burden of

persuasion is attached to the party who "runs the risk of nonpersuasion." *Id.* During a trial, this means if the "party with the burden of persuasion has not sustained it by a fair preponderance of the evidence—if the evidence is in equipoise or the opposing party's preponderates—the party with the burden must fail." *Id.* The burden of producing evidence is "the obligation of the party to present at the appropriate time ... evidence on the issue involved of sufficient substance to permit the fact finder to act upon it." *Id.* The burden of producing evidence shifts during the presentation of evidence. *Id.* The burden of persuasion, which generally does not shift unless by the operation of a legal presumption, becomes operative only after all the evidence is submitted. *Id.*

*Casper Iron,* 845 P.2d at 393.

In this case the Division had the burden of proof of intoxication. Once the Division met its burden by producing evidence of intoxication, the burden of producing evidence to the contrary shifted to Appellants. The Division still ran the risk of nonpersuasion on the issue of intoxication. There was no improper shifting of the burden of proof in this case.

### 6. SCOPE OF EMPLOYMENT, CULPABLE NEGLIGENCE

Because we have sustained the hearing examiner's finding that Johnson's injury was caused by his intoxication, we need not consider the issues of whether Johnson's death arose out of and in the course of his employment or whether Johnson's death was caused by his culpable negligence.

### CONCLUSION

We hold that the hearing examiner's decision that Johnson's injury was caused by his intoxication was supported by substantial evidence.

Affirmed.