In The Matter of the WORKER'S COM-
PENSATION CLAIM of Linda K.
HELM, an Employee of Flying J Oil
Company:

Linda K. Helm, Appellant
(Petitioner/Claimant),

v.

State Of Wyoming, ex rel., Wyoming
Workers' Safety And Compensation Di-
vision; and Flying J. Oil Co., Appellees
(Respondents).

No. 97–326.

Supreme Court of Wyoming.

June 16, 1999.

Bill G. Hibbler, Cheyenne, Wyoming, for Appellee.

William U. Hill, Attorney General; John W. Renneisen, Deputy Attorney General; Gerald W. Laska, Senior Assistant Attorney General; and Bernard P. Haggerty, Assistant Attorney General, Cheyenne, Wyoming, for Appellee State ex rel. Wyoming Workers' Safety and Compensaton Division.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and TAYLOR,* JJ.

THOMAS, Justice.

 The dispositive issue in this case is whether Linda K. Helm (Helm) failed to meet the burden of proof assigned to her

\* Chief Justice at time of expedited conference;

under *Pederson v. State ex rel. Wyoming Workers' Compensation Div.*, 939 P.2d 740, 742 (Wyo.1997). Specifically, the hearing examiner decided that Helm failed to demonstrate that carpal tunnel syndrome, claimed as a subsequent injury, was causally related to an original, covered injury to her knee. The failure of proof is subject to the rule on review testing whether the decision was arbitrary, capricious, an abuse of discretion, or contrary to law. Helm phrases the problem in alternative ways, but the determination that she failed to prove the causal connection between the two medical conditions structures the issue. The record in this case captures conflicting expert opinions on the issue of causation. Causal connection is a question of fact, and the function of determining the credibility of the witnesses and weighing the evidence is assigned to the hearing examiner. In a case such as this, the decision of the hearing examiner will be overturned only if it is clearly contrary to the great weight of the evidence. It is not. The Order Denying Benefits, premised on the failure of Helm to carry her burden of proof, is affirmed.

In the Brief of Appellant, the issues that are raised are:

I. Whether a subsequent injury sustained by a claimant, which is causally related to an existing compensable injury, should also be compensated by the Wyoming Workers' Safety and Compensation Division?

II. Whether the hearing examiner's decision denying benefits to appellant, Linda K. Helm, is arbitrary, capricious, contrary to law or supported by substantial evidence?

This Statement of the Issues is found in the Brief of Appellee, State of Wyoming, ex rel., Wyoming Workers' Safety and Compensation Division (Division):

*State ex rel. Wyoming Workers' Safety and Compensation Division:*

The Employee injured her left knee at work, she suffered more that fifty intervening falls, and more than a year later

retired November 2, 1998.

she injured her right wrist in a fall on the stairs in her house.

A. Was the denial of benefits for carpal tunnel syndrome supported by substantial evidence, within the Hearing Examiner's discretion, and in accordance with law.

On September 6, 1995, Helm, who then worked as a waitress in a Cheyenne truck stop, slipped on a wet floor at work, causing an injury to her left knee. The course of treatment of that injury was premised upon an MRI obtained on October 10, 1995, which apparently indicated, among other things, that her anterior cruciate ligament (ACL) was intact. Her treating physician attempted rehabilitation and conservative treatment, but Helm continued to have problems with her knee. Almost a year later, another MRI was conducted on September 11, 1996, which disclosed a complete tear of the ACL. Helm's physician concluded that this tear was causally related to the fall she had sustained at work.

The Division arranged for an independent medical evaluation by another physician. The physician employed by the Division also opined that the tear of the ACL was related causally to the original injury:

As to whether the original injury of September, 1995 resulted in the problems she is experiencing, due to the fact the patient has had no other specific injury over the course and is continually symptomatic, I would conclude the ACL tear is due to her original injury. As to why the MRI scan of 1995 was normal, MRI's are not entirely sensitive for cruciate ligament injuries. She may have had either a partial tear or the MRI missed the tear of the ACL, which may have been present since her initial injury. At any rate, due to the lack of another significant injury, I think the ACL tear was present after the initial injury. Therefore, the problems she is experiencing are directly related to her original injury to her left knee.

Following this examination, the Division agreed to pay for corrective surgery and treatment of the torn ACL.

On either November 24 or 25 of 1996, Helm sustained a fall while descending the stairs in her home. When she saw her treating physician a few days later, she also complained of intermittent numbness in her right arm. The numbness persisted, and her physician diagnosed the condition as Carpel Tunnel Syndrome (CTS). The physician concluded that Helm's problem with her ACL had caused her to fall at home and that fall, in turn, resulted in her suffering from CTS. When this information was presented to the Division, it sent Helm's file to still another physician for a chart review. Based upon his review of the chart, the third physician concluded that Helm's CTS was not work related. Following that assessment, the Division denied the claim for benefits for CTS submitted by Helm.

Helm requested a hearing on the final determination relating to her claim for CTS. On July 2, 1997, that hearing occurred before a hearing examiner of the Office of Administrative Hearings. Helm testified on her own behalf, and she also called her daughter as a witness. She also offered six exhibits: (1) the deposition of her treating physician; (2) a letter from the Division to the second physician requesting an evaluation of Helm; (3) the independent medical evaluation by the second physician; (4) the final determination letter dated September 27, 1995; (5) the final determination letter dated November 15, 1996; and (6) the final determination letter dated March 3, 1997. All of Helm's exhibits were received into evidence by the hearing examiner.

The Division called no witnesses at the hearing. Instead, counsel for the Division conducted cross-examinations of Helm and her daughter, and the Division introduced five exhibits of its own: (a) the emergency room report dated September 6, 1995; (b) the chart review by the third physician; (c) the treatment record from Helm's treating physician; (d) the progress report from the Platte County Memorial Hospital dated January 7, 1997; and (e) the report of Cheyenne Radiology and MRI dated September 11, 1996. Like Helm's exhibits, the Division's exhibits were received into evidence.

The evidence most favorable to the Division's determination to deny benefits is the

review of the medical records made by the third physician. In the course of that review, the third physician was asked, "[c]ould a fall cause carpal tunnel syndrome?" His response was:

Carpal tunnel is generally considered a repetitive use type of syndrome. It is my opinion that it could not occur with just one fall. Therefore, I cannot relate the carpal tunnel to the work-related injury in September of 1995.

In addition to the testimony of the third physician, the Division established by cross-examination of Helm's daughter that Helm engaged in craft hobbies, including crocheting, which could involve repetitive hand and wrist motions.

At the hearing, most of the Division's evidence and its argument focused on a demonstration of the proposition that Helm's ACL tear was not related to the fall she sustained at work. The natural extension of that theory is that the fall on the stairs at home was not work related, and, even if the CTS was a product of the fall on the stairs, it did not result from her injury at work. The Division supported this position with the treatment records of the treating physician, which indicated that Helm's cruciate ligament was intact on her initial visit. The treating physician also testified in his deposition that although he believed the ACL tear was a product of the work injury, he could not actually prove that fact.

The third physician, from a review of the record, presented a contrary conclusion to those of the treating physician and the physician who examined Helm on behalf of the Division. The doctor explained his conclusion at some length:

There was really no instability to the knee noted until quite some time after the September 1995 injury. The instability was not noted until the slip and fall which occurred almost one year after the original work-related injury. If she did have a partial tear and the MRI was not sensitive to it, there certainly should have been an effusion accompanying that, and this goes against the initial MRI report. It suggests that there could have been an internal derangement of the knee. With the lack of effusion, which would have signified some injury, even if there was a partial injury, it is my opinion that some level of effusion should have been present. It is very hard to believe that she may have had a partial tear with a normal ligamentous examination that progressed to a complete tear on an MRI a year later. Therefore, I would have a hard time conceptualizing and believing that the second MRI showed a complete anterior cruciate ligament deficient knee and an unstable knee which was giving way and that it would be related to her September 6, 1995 injury. In my opinion, the only plausible explanation is that there was another intervening injury and that injury caused the knee to be completely unstable and caused an anterior cruciate ligament to be torn across.

It is also my opinion that the fact that she now has an anterior cruciate ligament that is completely torn * * * does not appear to be compatible or consistent with the examinations that have been rendered to her. The initial MRI report showed no effusion, normal findings, and is now compared to what is now later being identified as a completely torn anterior cruciate ligament and unstable knee. Therefore, it is my opinion that another injury must have occurred and her current condition is not related to her work injury of September 6, 1995.

After the hearing, the hearing examiner ruled in favor of the Division. In the conclusions of law, the hearing examiner stated:

7. Helm has failed to meet her burden in that she has failed to establish a causal nexus between the knee injury in 1995 and the [CTS] condition in 1996. From the time of her original knee injury to the November 1996 fall, Helm fell at least 50 times. None of these were at work with Flying J Oil Company and the fall in November was in Helm's house. Helm worked as a waitress and this work requires extensive repetitive motion. This Office is not persuaded that the work injury in 1995 caused Helm's knee to go out and that when she fell in November 1996 it caused her [CTS] condition. Too much time has passed between the two injuries,

there are two different body parts involved and Helm's work as a waitress is more likely the cause of the [CTS] than a single fall.

Helm sought review of the Order Denying Benefits in the district court, and the case was certified to this Court in accordance with W.R.A.P. 12.09.

Helm suggests that this Court should re-evaluate the evidence included in the record of the administrative hearing and substitute our judgment for that of the hearing examiner. We do not apply our substantial evidence rule in that way because the rule limits this Court to analyzing the record to determine if there is evidence from which a reasonable person could find the fact or facts as found by the hearing examiner. The relationship between the substantial evidence rule as it pertains in administrative proceedings and the rule that is used when the agency concludes that there has been a failure of proof has produced some consternation. These rules are not mutually exclusive. The substantial evidence rule is invoked to determine the validity of the factual findings by the agency. The failure of a factual finding on a material issue to be supported by substantial evidence leads to a conclusion that error is present in the proceedings. Assuming, as we determine is true here, that the findings of fact are supported by substantial evidence, we then test whether the agency determination that a claimant failed to meet the burden of proof assigned to her is arbitrary, capricious, an abuse of discretion, or otherwise not supported by law.

■ In a worker's compensation matter, we said recently:

A claimant for worker's compensation benefits has the burden of proving all the essential elements of the claim by a preponderance of the evidence in the contested case hearing. *Martinez v. State ex rel.* *Wyoming Workers' Compensation Div.,* 917 P.2d 619, 621 (Wyo.1996). When an agency decides that the party charged with the burden of proof has failed to meet that burden, the case is reviewed under the "[a]rbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law" language of Wyo. Stat. § 16–3–114(c)(ii) (1990). *City of Casper v. Utech,* 895 P.2d 449, 452 (Wyo.1995). On appeal the complainant * * * has the burden of proving arbitrary administrative action. *Knight v. Environmental Quality Council of State of Wyo.,* 805 P.2d 268 (Wyo.1991); *Wyoming Bancorporation v. Bonham,* 527 P.2d 432, 439 (Wyo.1974); *Marathon Oil Co. v. Welch,* 379 P.2d 832, 836 (Wyo.1963); *Whitesides v. Council of City of Cheyenne,* 78 Wyo. 80, 319 P.2d 520, 526 (1957). The agency, as the trier of fact, is charged with weighing the evidence and determining the credibility of witnesses. *Utech,* 895 P.2d at 451, and cases there cited. The deference normally accorded to the findings of fact by a trial court is extended to the administrative agency, and the agency's decision as to the facts will not be overturned unless it is clearly contrary to the overwhelming weight of the evidence. *Wyoming Steel & Fab, Inc. v. Robles,* 882 P.2d 873, 875 (Wyo.1994).

*Pederson,* 939 P.2d at 742.

■ Applying the *Pederson* standard, we do not disturb the decision of the hearing examiner unless a claimant, in this instance Helm, can demonstrate that it was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. This rule affords the petitioner the opportunity to show that the findings of fact [1] were contrary to the overwhelming weight of the evidence. When an agency's action or decision is "based on a consideration of relevant factors and is rational," we will not rule that the

---

1. Although the hearing examiner labeled his finding that Helm's CTS was not work related as a conclusion of law, it is more properly a finding of fact. In such cases, this Court will review findings in their proper category, regardless of how the hearing examiner has labeled them. *Billings v. Wyoming State Bd. of Outfitters and Professional Guides,* 837 P.2d 84, 87 (Wyo.1992). *See also Kilmer v. Dillingham City School Dist.,* 932 P.2d 757, 764 n. 8 (Alaska 1997) and *Battaglia Properties, Ltd. v. Florida Land and Water Adjudicatory Com'n,* 629 So.2d 161, 168 (Fla.App.1993). Lest there be any doubt, we reiterate that the question of whether an injury occurred in the course of employment is a question of fact. *Cabral v. Caspar Bldg. Systems, Inc.,* 920 P.2d 268, 269 (Wyo.1996).

action or decision is arbitrary or capricious. *Mortgage Guaranty Ins. Corp. v. Langdon*, 634 P.2d 509, 520 (Wyo.1981).

 Helm, as a claimant of worker's compensation benefits, was charged with the burden of establishing each element of her claim. *Shassetz v. State ex rel. Wyoming Workers' Safety and Compensation Div.*, 920 P.2d 1246, 1248 (Wyo.1996) (quoting *Padilla v. Lovern's, Inc.*, 883 P.2d 351, 354 (Wyo. 1994)). Even though Helm asserts that the burden shifted to the Division after she made a prima facie case, the burden of proof does not shift to the Division. *Shassetz*, 920 P.2d at 1250; *Johnson v. State ex rel. Wyoming Workers' Compensation Div.*, 911 P.2d 1054, 1061–62 (Wyo.1996); *Casper Iron & Metal, Inc. v. Unemployment Ins. Com'n of Dept. of Employment of State of Wyo.*, 845 P.2d 387, 393 (Wyo.1993). Properly assigning the burden of proof to Helm, the hearing examiner ruled that she had failed to meet that burden and had failed to prove a causal relationship between her fall at work and her CTS. That determination is exclusively within the province of the hearing examiner, and we defer to his judgment. *Pederson*, 939 P.2d at 742. The evidence in this case provided a rational basis for the hearing examiner to conclude that Helm had failed to establish that causal connection by a preponderance of the evidence. This decision was neither arbitrary nor capricious. It did not manifest an abuse of discretion, nor can it be said that it was otherwise not in accordance with law. It is not contrary to the overwhelming weight of the evidence. In such an instance, this Court does not re-weigh the evidence because that function is exclusively the province of the hearing examiner. *Pederson*, 939 P.2d at 742–43.

The Order Denying Benefits entered by the Office of Administrative Hearings is affirmed.

GOLDEN, Justice, dissenting.

Because I believe the majority opinion's decision is an erroneous one resulting from its application of an incorrect standard of review, I respectfully dissent. The sole issue before the hearing examiner was Helm's claim that her wrist injury was causally related to a compensable work injury. The state of the evidence before the hearing examiner clearly settled that her claim was not mere assertion. She established a prima facie case, and we must, therefore, examine the hearing examiner's conclusion of law that she has "failed to meet her burden" as legally concluding that her prima facie showing has been satisfactorily rebutted by the Division's countervailing evidence. *Pan American Petroleum Corp. v. Wyoming Oil & Gas Conservation Comm'n*, 446 P.2d 550, 557 (Wyo. 1968). In *City of Casper v. Utech*, 895 P.2d 449, 452 (Wyo.1995), we found that when a hearing examiner decides that a party has not met its burden of proving its case as a whole, *Pan American* will still apply. *Utech* then determined, in what the majority opinion calls the *Pederson* standard, that when a claimant "fails in her burden of proof" to establish a prima facie case, it will apply the "arbitrary, capricious, ... not in accordance with law" standard of review. *Id.*

Despite *Utech*'s limitation, the hearing examiner's use of the seemingly magic words "failed to meet her burden" has caused the majority opinion to ignore the *Pan American* portion of the *Utech* standard of review. Where, as here, a claimant establishes a prima facie case and then is found to have failed in proof of the case as a whole, this Court is required to review the decision under *Pan American* and its progeny. *Pan American* requires that in his written decision, the hearing examiner must sufficiently set forth the basic facts prompting his ultimate conclusion on factual issues that the claimant's established prima facie case has been satisfactorily rebutted by the Division's countervailing evidence. *Pan American*, 446 P.2d at 557.

In my judgment, this hearing examiner's written decision falls far short of the *Pan American* requirement. The relevant facts show that Helm was under the care of Dr. Gasser and saw him several times after she was initially injured on September 6, 1995. Dr. Gasser's deposition testimony plainly stated his expert opinion that the instability of her injured knee caused numerous falls, and Helm injured her wrist from one of these falls. In an evaluation arranged by the Divi-

sion, Dr. Rangitsch also examined Helm and testified that the knee was "grossly unstable." Without personally examining Helm, Dr. Akmakjian reported that Helm's knee was "completely unstable" but "does not have a trick knee that caused the fall." It is unclear of which fall he speaks. Dr. Akmakjian was not asked for his opinion as to whether Helm actually suffered from carpal tunnel syndrome, but he did reply to the question "[c]ould a fall cause carpal tunnel syndrome" in this manner:

> Carpal tunnel is generally considered a repetitive use type of syndrome. It is my opinion that it could not occur with just one fall. Therefore, I cannot relate the carpal tunnel to the work-related injury in September of 1995.

As a reviewing court, we have no idea why the hearing examiner accepted the speculative opinion of Dr. Akmakjian, who performed a "paper review," over the opinions of Dr. Gasser, the claimant's treating physician, and Dr. Rangitsch, who also saw the claimant upon the Division's request. Paragraph seven of the hearing examiner's conclusions of law is not explanatory and is actually baffling. The claimant fell at least fifty times between the date of her September, 1995, work-related fall, which the Division at all times agreed caused the original knee injury, and the date of her November, 1996, fall which injured her right wrist and arm for which she sought an award. It is irrelevant that those falls did not occur at work. A preponderance of the evidence shows that the September, 1995, work-related knee injury caused these falls, and Dr. Akmakjian's testimony does not refute it. In finding that Helm failed in her burden of proof, the hearing examiner concludes "[t]oo much time has passed between the two injuries." That is an irrelevant finding because no medical expert based an opinion on the passage of time. He also concludes "there are two different body parts involved." No kidding! That is also irrelevant in the face of the obvious connection between an injured knee that gives way, causing one to fall, and the injury of the wrist and arm in the fall. Finally, the hearing examiner interestingly concludes, **without any findings of fact to support it**, that the claimant's waitress work "requires exten-

sive repetitive motion" and that work "is more likely the cause of the [carpal tunnel] than a single fall." Dr. Akmakjian's report may have cast doubt on whether the wrist injury was properly labeled as carpal tunnel syndrome, but no evidence refuted that her wrist and arm were injured by the single fall and that injury is compensable. I have no confidence in a hearing examiner's decision which contains such deficient and baffling reasoning, and I must respectfully dissent.