**Daniel B. FRAZIER, Appellant (Petitioner),**

v.

**STATE of Wyoming, ex rel., WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee (Respondent).**

**No. 99–174.**

Supreme Court of Wyoming.

Feb. 28, 2000.

Representing Appellant: Donald L. Painter, Casper, WY.

Representing Appellee: Gay Woodhouse, Assistant Attorney General; John W. Renneisen, Deputy Attorney General; and Gerald W. Laska, Senior Assistant Attorney General.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN, and HILL, JJ.

HILL, Justice.

After a contested case hearing to determine Appellant Daniel Frazier's eligibility for worker's compensation benefits, the hearing examiner held that Appellant failed to prove by a preponderance of the evidence that his working conditions materially aggravated his preexisting medical condition. The district court affirmed the hearing examiner's denial of Appellant's request for medical benefits.

We affirm.

## ISSUES

Appellant presents the following issues for review:

1. Whether there was any factual basis for the decision of the Hearing Examiner in this case in denying Appellant's claim for worker's compensation benefits.

Appellee (the Division) provides two issues for review:

I. Is the Hearing Examiner's Order Denying Benefits supported by substantial evidence and within her discretion?

II. Is the Hearing Examiner's Order Denying Benefits in accordance with Wyoming law?

## FACTS

Appellant began his employment with Excal, Inc. in Casper on October 8, 1996, initially working as a grinder. During his first month at Excal, Appellant experienced pain in his forearm, shoulder, and neck. Appellant reported the pain to his supervisor and sought medical treatment. The doctor prescribed medication for the pain, and the company transferred him to a different work area.

In this new position, Appellant lifted 50– to 80–pound molds 40 to 60 times in a 10– to 12–hour shift. On July 3, 1997, Appellant experienced lower back pain while lifting one of the molds. He notified his supervisor and sought medical attention that afternoon. During this visit to the doctor, Appellant reported that his lower back had been hurting him for three to four months, but could not identify a specific cause or date of injury. The physician's assistant, who treated Appellant, concluded that he was suffering from lower back pain of "uncertain etiology" and scheduled lumbar and pelvis x-rays. The x-rays identified "a grade 1 spondylolisthesis with a little spondylitis at L5/S1." The physician's assistant designed a rehabilitation program of medication, heat, ice, physical therapy, and education on lifting techniques. Appellant testified that this improved his condition for two to three months.

In early January of 1998, Appellant returned to the same clinic complaining of back pain. A magnetic resonance imaging test (MRI) was performed on Appellant on March 17, 1998, which detected a "bilateral spondylolysis at L5 with a grade I to grade II anterior spondylolysis at L5 relative to S1." Relying on the MRI, the physician's assistant explained to Appellant that he had a previously unidentified congenital defect. (During his deposition, Dr. Albert Metz, Appellant's treating physician, explained the condition. According to Dr. Metz, Appellant's spinal vertebrae failed to properly develop at birth, causing the L5 vertebra to slip in front of the next lower vertebra, the S1 or sacral bone.) Consequently, the physician's assistant recommended that Excal place Appellant on light duty, and Excal followed that recommendation.

Appellant continued to receive medical treatment from Dr. Metz, who advised Appellant to undergo a fusion operation to prevent recurring lower back pain. During Dr. Metz's deposition, he testified that he could not say, in terms of reasonable medical probability, when the slippage began. He did testify, however, in terms of reasonable medical probability, that ". . . repetitive bending and picking up of heavy weight on the job aggravated [Frazier's] problem. It made him symptomatic at this time." On cross-examination, Dr. Metz stated that Appellant was predisposed for slippage of the bones since birth. He further testified that, ". . . it would be very unlikely that all of the observed slippage would have occurred [during the year and a half that Appellant worked for Excal]." Dr. Metz concluded that there was no objective medical evidence to pinpoint the date that Appellant was injured.

After reviewing Appellant's file, the Division agreed to pay Appellant's medical expenses incurred through April 28, 1998. The Division also determined that the condition was a preexisting congenital and degenerative condition and, therefore, declined to pay future benefits. Appellant then submitted a second medical opinion to the effect that while his condition was work-related, it was a preexisting congenital condition which may have become symptomatic on its own. The hearing examiner denied benefits and concluded that Appellant failed to demonstrate that "working at Excal contributed to a 'material degree' to the aggravation of his preexisting condition." On appeal, the district court concluded that the hearing examiner's decision was supported by substantial evidence and affirmed the denial of benefits. Appellant filed a timely appeal to this Court.

## STANDARD OF REVIEW

Recently, in *Thomas v. Star Aggregates, Inc.*, 982 P.2d 714 (Wyo.1999), we articulated the standard of review to be applied when determining whether the hearing examiner correctly found that the claimant failed to meet his or her burden of proof:

A claimant for worker's compensation benefits has the burden of proving all the essential elements of the claim by a preponderance of the evidence in the contested case hearing. *Martinez v. State ex rel. Wyoming Workers' Compensation Div.* 917 P.2d 619, 621 (Wyo.1996). When an agency decides that the party charged with the burden of proof has failed to meet that burden, the case is reviewed under the "[a]rbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law" language of Wyo. Stat. § 16–3–

114(c)(ii) (1990). *City of Casper v. Utech,* 895 P.2d 449, 452 (Wyo.1995). On appeal the complainant * * * has the burden of proving arbitrary administrative action. *Knight v. Environmental Quality Council of State of Wyo.,* 805 P.2d 268 (Wyo.1991); *Wyoming Bancorporation v. Bonham,* 527 P.2d 432, 439 (Wyo.1974); *Marathon Oil Co. v. Welch,* 379 P.2d 832, 836 (Wyo.1963); *Whitesides v. Council of City of Cheyenne,* 78 Wyo. 80, 319 P.2d 520, 526 (1957). The agency, as the trier of fact, is charged with weighing the evidence and determining the credibility of witnesses. *Utech,* 895 P.2d at 451, and cases there cited. The deference normally accorded to the findings of fact by a trial court is extended to the administrative agency, and the agency's decision as to the facts will not be overtured unless it is clearly contrary to the overwhelming weight of the evidence. *Wyoming Steel & Fab, Inc. v. Robles,* 882 P.2d 873, 875 (Wyo.1994).

In *Helm v. State ex rel. Wyoming Workers' Safety and Compensation Div.,* 982 P.2d 1236, 1240 (Wyo.1999), we further stated:

> Applying the *Pederson [v. State ex rel. Wyoming Workers' Compensation Division,* 939 P2d 740 (Wyo.1997)] standard, we do not disturb the decision of the hearing examiner unless a claimant, in this instance Helm, can demonstrate that it was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. This rule affords the petitioner the opportunity to show that the findings of fact ... were contrary to the overwhelming weight of the evidence. When an agency's action or decision is "based on a consideration of relevant factors and is rational," we will not rule that the action or decision is arbitrary or capricious. *Mortgage Guaranty Ins. Corp. v. Langdon,* 634 P.2d 509, 520 (Wyo.1981).

*Thomas,* 982 P.2d 714, 715–716 (Wyo.1999) (footnote omitted). *See also Murray v. Wyoming Workers' Safety and Compensation Division,,* 993 P.2d 327 (Wyo.1999).

## DISCUSSION

The issue in this case is whether or not the Appellant's injury, suffered at his place of employment on both July 3, 1997, and January 6, 1998, materially aggravated a preexisting injury or condition. The applicable statute in this case is Wyo. Stat. Ann. § 27–14–102(a)(xi)(F) (LEXIS 1999), which states:

> (xi) "Injury" means any harmful change in the human organism other than normal aging and includes damage to or loss of any artificial replacement and death, arising out of and in the course of employment while at work in or about the premises occupied, used or controlled by the employer and incurred while at work in places where the employer's business requires an employee's presence and which subjects the employee to extrahazardous duties incident to the business. "Injury" does not include:
>
> . . . .
>
> (F) Any injury or condition preexisting at the time of employment with the employer against whom a claim is made[.]

The burden of establishing entitlement to a claimed benefit rests solely on the employee who is charged with demonstrating that the injury occurred while at work. *Hepp v. State ex rel. Workers' Compensation Division,* 881 P.2d 1076, 1079 (Wyo.1994). "A pre-existing condition may present a compensable claim, 'if the employment aggravated, accelerated, or combined with the disease or infirmity to produce the * * * disability for which compensation is sought.' " *Haynes v. State ex rel. Wyoming Workers' Compensation Division,* 962 P.2d 876, 878 (Wyo. 1998) (citations and quotations omitted). To prove aggravation of a preexisting injury, the claimant must demonstrate that the "work effort contributed to a **material** degree to the precipitation, aggravation or acceleration of the existing condition of the employee." *Lindbloom v. Teton International,* 684 P.2d 1388, 1389–90 (Wyo.1984) (emphasis added). Speculative medical testimony, however, is insufficient to satisfy Appellant's burden of proof. *Walsh v. Holly Sugar Corp.,* 931 P.2d 241 (Wyo.1997).

Appellant claims that his case is similar to *State ex rel. Wyoming Workers' Compensation Division v. Roggenbuck*, 938 P.2d 851 (Wyo.1997). In *Roggenbuck*, we upheld the hearing examiner's finding that, even with a lengthy history of back problems, the work effort "brought the need for surgery to a head." 938 P.2d at 853. The case before us is distinguishable from *Roggenbuck* in two respects. First, Appellant failed to present evidence of an accident or an identifiable exertion which caused his injury. Second, Appellant presented only speculative evidence that a material portion of his injury could be attributed to work.

We begin by looking at Appellant's statement to the physician's assistant. In their initial meeting, Appellant reported that his lower back had been hurting three or four months but could not identify a specific cause or date of the injury. This evidence appears inconsistent with Appellant's claim that an injury occurred on July 3, 1997. Recently, in *Morgan v. Olsten Temporary Services*, 975 P.2d 12, 15 (Wyo.1999), we affirmed the hearing examiner's denial of benefits because there were ambiguities and inconsistencies throughout the record. Morgan told the Division that he suffered an on-the-job injury but told doctors he could not pinpoint a specific episode or event at work that caused the pain. Here, in addition to Appellant's failure to specify a date of injury, Dr. Metz testified that there was no objective medical evidence to pinpoint the day Appellant suffered the slippage. His precise statement was, "I don't think I can say when the slippage began." He also testified that he thought ". . . it would be very unlikely that all of the observed slippage would have occurred at that time or during that time [Appellant worked for Excal]."

The second factor distinguishing this case from *Roggenbuck* is that the medical testimony Appellant presented was speculative. In contrast to *Roggenbuck* where the treating physician attributed 50 percent of the employee's current condition to his employment, neither Dr. Metz nor Dr. Turner attributed a percentage of the injury to Appellant's on-the-job lifting. In addition to Dr. Metz's speculation about the time period when the slippage occurred, notes from Dr. Turner, Appellant's second expert witness, did not provide any concrete evidence demonstrating that Appellant's work materially aggravated his existing condition. Dr. Turner believed that although Appellant became symptomatic at work, ". . . it is certainly true that he had a pre-existing congenital condition, which may have become symptomatic on [its] own. In this case, I can only say by his history it seems it is a work related injury that began to make him . . . symptomatic."

The hearing examiner is in the best position to judge and evaluate the expert witnesses and their opinions. Given the equivocal expert testimony Appellant provided, it was not possible for the hearing examiner to determine whether the accident arose out of and in the course of his employment, and, therefore, the Appellant failed to sustain his burden. *See Morgan*, 975 P.2d at 15. Based on the evidence presented, it was reasonable for the hearing examiner to conclude that the work did not materially aggravate Appellant's preexisting condition and deny further benefits.

## CONCLUSION

The hearing examiner's determination that Appellant failed to prove a work-related material aggravation of a congenital condition is a reasonable conclusion from the facts presented.

We affirm the hearing examiner's order.