**Eugene P. SMITH III, Appellant (Petitioner),**

v.

**STATE of Wyoming ex rel. WYOMING DEPARTMENT OF TRANSPORTATION, Appellee (Respondent).**

**No. 00–71.**

Supreme Court of Wyoming.

Oct. 4, 2000.

Representing Appellant: R. Michael Vang of Kirkwood, Nelson & Vang, P.C., Laramie, Wyoming.

Representing Appellee: Gay Woodhouse, Attorney General; Rowena L. Heckert, Deputy Attorney General; and Dennis M. Coll, Senior Assistant Attorney General.

Before LEHMAN, C.J., and THOMAS, GOLDEN, HILL & KITE, JJ.

KITE, Justice.

Appellant Eugene P. Smith III was arrested by Laramie Police Officer Charles Don-

nelly for driving while under the influence of alcohol. He refused to take the chemical tests as required by Wyoming's implied consent law which resulted in an automatic six-month suspension of his driver's license for a first offense. Subsequent to a contested case hearing, the Office of Administrative Hearings issued an Order Upholding Implied Consent Suspension. Mr. Smith filed a Petition for Judicial Review contending lack of foundation for admission of the field sobriety tests and lack of requisite probable cause for the arrest. The district court upheld the license suspension, and we affirm.

## ISSUES

Mr. Smith presents these issues for our review:

Was a proper foundation established for admission of the standardized field sobriety maneuvers utilized by the arresting officer to create his probable cause to arrest Mr. Smith, where the arresting officer failed to follow the necessary procedures for giving these tests?

Absent the field sobriety tests, did the arresting officer have probable cause to make a DWUI arrest?

Appellee State of Wyoming ex rel. Wyoming Department of Transportation restates the issues as follows:

I. Were the procedures and results of the field sobriety tests and the HGN test admissible under Rule 702, Wyo.R.Evid.?

II. Did Officer Donnelly have probable cause to arrest Smith for DWUI and request him to submit to a chemical test of breath?

## FACTS

On May 15, 1999, at approximately 7:18 p.m., Officer Donnelly stopped Mr. Smith for driving his vehicle forty-two miles per hour in a thirty-mile-per-hour zone. As Officer Donnelly approached the vehicle, Mr. Smith rolled down his window approximately two inches and attempted to pass his driver's license and insurance papers out through the opening. Because Mr. Smith experienced difficulty putting the papers through the narrow space, Officer Donnelly asked him to roll the window down further, and Mr. Smith complied. Officer Donnelly took the driver's license and noticed that Mr. Smith's eyes were bloodshot and glassy and there was an odor of an alcoholic beverage coming from inside the vehicle. He asked Mr. Smith if he had been drinking, and Mr. Smith replied that he consumed a couple of drinks with dinner. The officer asked Mr. Smith to step out of his vehicle. Mr. Smith hesitated and then asked Officer Donnelly to write him a ticket for speeding and let him go. Officer Donnelly again told Mr. Smith to exit the vehicle. Mr. Smith got out of the vehicle, and Officer Donnelly conducted three standardized field sobriety tests–the horizontal gaze nystagmus[1] test, the walk and turn test, and the one-leg stand test.

Officer Donnelly scored Mr. Smith a six on the horizontal gaze nystagmus test (zero to six with zero reflecting no impairment), a three on the walk and turn test (zero to nine with zero reflecting no impairment), and no points on the one-leg stand test (zero to five with zero reflecting no impairment).[2] On the bases of the speeding violation, the admitted alcohol consumption, the odor of alcohol, the general observations of Mr. Smith's behavior, and the results of the field sobriety tests, Officer Donnelly determined that he had

---

**1.** Nystagmus is an involuntary jerking or bouncing of the eyeball that occurs when there is a disturbance of the vestibular (inner ear) system or the oculomotor control of the eye. Horizontal gaze nystagmus refers to a lateral or horizontal jerking when the eye gazes to the side. In the impaired driving context, alcohol consumption or consumption of certain other central nervous system depressants–inhalants or phencyclidine–hinders the ability of the brain to correctly control eye muscles, causing the jerk or bounce associated with horizontal gaze nystagmus. As the degree of impairment becomes greater, the

jerking or bouncing–i.e., the nystagmus–becomes more pronounced. This is assessed in the horizontal gaze nystagmus test. American Prosecutors Research Institute, National Traffic Law Center, Horizontal Gaze Nystagmus: The Science and the Law, A Resource Guide for Judges, Prosecutors and Law Enforcement (1999).

**2.** U.S. Department of Transportation, National Highway Traffic Safety Administration, Improved Sobriety Testing.

probable cause to believe Mr. Smith was operating a motor vehicle while intoxicated to a degree which rendered him incapable of driving the vehicle safely.

Mr. Smith was transported to the Albany County Detention Center and was read the implied consent form. He refused to submit to chemical tests. He was then read his *Miranda* rights, and he declined to answer any questions. Mr. Smith was issued citations for speeding and driving while under the influence of alcohol and was also issued a notice of suspension of his driver's license.

## STANDARD OF REVIEW

Mr. Smith claims the foundation for the field sobriety tests was inadequate for admission. Absent the results of those tests, he contends there was insufficient evidence of probable cause for a warrantless arrest and, therefore, his suspension should be reversed. We noted in *Nellis v. Wyoming Department of Transportation*, 932 P.2d 741, 743 (Wyo. 1997) (some citations omitted), that the appropriate standard of review for driver's license suspension proceedings presenting issues of this nature is as follows:

> Rule 12.09, of the Wyo. R.App. P. provides that judicial review of an action by an administrative agency must be consistent with Wyo. Stat. § 16–3–114(c) (1990), which provides:
>
> "The reviewing court shall:
>
> . . .
>
> "(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
>
> "(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
>
> ". . . or
>
> "(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute."

When a case initiated in an administrative agency comes before this court on appeal we do not give any special deference to the decision of the district court. Instead, we review the case as if it came to us directly from the agency. The defer-

ence normally accorded the findings of fact by a trial court is extended to an administrative agency, and the agency's determination of the facts will not be overturned unless clearly contrary to the overwhelming weight of the evidence on record. On review, we examine the entire record to determine whether substantial evidence is present to support the findings of fact by the hearing examiner. "Substantial evidence is relevant evidence which a reasonable mind might accept in support of the conclusions of an agency." *Stuckey v. State, ex rel. Wyoming Worker's Compensation Div.*, 890 P.2d 1097, 1099 (Wyo. 1995). There must be more than a mere scintilla of evidence or a simple suspicion for the fact to be established.

## DISCUSSION

### A. Hearing Examiner Properly Admitted Field Sobriety Test Results

The admissibility of scientific and technical evidence in a judicial proceeding is governed by W.R.E. 702 and the four-part test set out in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). *See Seivewright v. State*, 7 P.3d 24 (Wyo.2000); *Bunting v. Jamieson*, 984 P.2d 467 (Wyo.1999); *Kumho Tire Company, Ltd. v. Carmichael*, 526 U.S. 137, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). It is the "general rule that administrative agencies acting in a judicial or quasi judicial capacity are not bound by technical rules of evidence that govern trials by courts or juries." *Story v. Wyoming State Board of Medical Examiners*, 721 P.2d 1013, 1018 (Wyo.1986). For this reason, we do not believe a *Daubert* analysis is necessary to address the evidentiary questions raised in this appeal.

The Wyoming Administrative Procedure Act, Wyo. Stat. §[§ ] 16–3–101 to –115 (1990 & Supp.1995), sets the broad standard for admissibility of evidence at an administrative hearing: The evidence must be of the type that is "commonly relied upon by reasonably prudent men in the conduct of their serious affairs." Section 16–3–108(a).

*Thornberg v. State ex rel. Wyoming Workers' Compensation Division,* 913 P.2d 863, 867 (Wyo.1996).

> We recently described the standard of an abuse of discretion as "reaching the question of reasonableness of the choice made by the trial court." *Vaughn v. State,* 962 P.2d 149, 151 (Wyo.1998). In *Vaughn,* we confirmed the following definition:
>
> > "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means [exercising] sound judgment ... with regard to what is right under the circumstances and without doing so arbitrarily or capriciously. *Byerly v. Madsen,* 41 Wash.App. 495, 704 P.2d 1236 (1985)."
>
> *Vaughn,* 962 P.2d at 151 *(quoting Martin v. State,* 720 P.2d 894, 897 (Wyo.1986)). This definition is equally useful for all rulings tested by the abuse of discretion standard.

*Shryack v. Carr Construction Company, Inc.,* 3 P.3d 850, 855 (Wyo.2000).

■ This Court has permitted a hearing examiner to rely on field sobriety tests, including the horizontal gaze nystagmus test, in addition to the officer's personal observations to determine whether the officer had probable cause during the course of a drunk driving stop. *Nellis,* 932 P.2d at 744; *Nesius v. State Department of Revenue and Taxation, Motor Vehicle Division,* 791 P.2d 939, 941–42 (Wyo.1990). In the criminal context, a significant number of courts have held that admission of sobriety tests, including the horizontal gaze nystagmus test, is appropriate as long as a proper foundation as to the techniques used and the officer's training, experience, and ability to administer the test has been laid. *State v. Ito,* 90 Hawai'i 225, 978 P.2d 191, 201 (1999); *Ballard v. State,* 955 P.2d 931 (Alaska Ct.App.1998); *Zimmerman v. State,* 693 A.2d 311 (Del.Super.Ct.1997); *State v. Taylor,* 694 A.2d 907 (Me.1997); *Hawkins v. State,* 223 Ga.App. 34, 476 S.E.2d 803 (1996); *People v. Berger,* 217 Mich.App. 213, 551 N.W.2d 421 (1996); *Schultz v. State,* 106 Md.App. 145, 664 A.2d 60 (1995); *Emerson v. State,* 880 S.W.2d 759 (Tex.Crim.App.), *cert. denied,* 513 U.S. 931, 115 S.Ct. 323, 130 L.Ed.2d 284 (1994); *People v. Buening,* 229 Ill.App.3d 538, 170 Ill.Dec. 542, 592 N.E.2d 1222 (1992), *appeal denied,* 146 Ill.2d 634, 176 Ill.Dec. 806, 602 N.E.2d 460 (1992); *State ex rel. Hamilton v. City Court of City of Mesa,* 165 Ariz. 514, 799 P.2d 855 (1990); *State v. Murphy,* 451 N.W.2d 154 (Iowa 1990); *State v. Armstrong,* 561 So.2d 883 (La.Ct.App.), *writ denied,* 568 So.2d 1077 (La.1990); *State v. Clark,* 234 Mont. 222, 762 P.2d 853 (1988). On this authority, it is reasonable to apply a similar standard in the less stringent evidentiary environment of an administrative hearing. The field sobriety test results are the type of evidence commonly relied upon by reasonably prudent men in the conduct of their serious affairs. We conclude that, if the evidence establishes the tests were properly administered by a qualified person, the foundation is sufficient for admission in an administrative hearing.

■ Mr. Smith contends that a police officer is competent to testify as to field sobriety test results only if the tests were conducted with strict observance of the procedures established by the U.S. Department of Transportation, National Highway Traffic Safety Administration, Improved Sobriety Testing manual (the National Highway Traffic Safety Administration manual).[3] Considering that there may be other means of law enforcement training available now and in the future, for the purpose of establishing probable cause, a law enforcement officer may testify to the results of field sobriety tests (including the horizontal gaze nystagmus test) if it is shown that the officer has been adequately trained in the administration and assessment of those field sobriety tests and conducted them in substantial accordance with that training. *See State v. Baue,* 258 Neb. 968,

---

**3.** The district court was under the impression that Mr. Smith advocated a standard requiring the police officer to be capable of testifying regarding the scientific basis of the tests. On appeal, Mr. Smith asserts that this was not an issue presented in his Petition for Judicial Review.

Pursuant to W.R.A.P. 12.09(a), review of administrative decisions is confined to the issues set forth in the petition for review. Although this argument can also be inferred from Mr. Smith's brief, it is not addressed for lack of specific pleading.

607 N.W.2d 191, 205 (2000); *see also Williams v. State,* 710 So.2d 24, 32 (Fla.Dist. Ct.App.), *review denied,* 725 So.2d 1111 (Fla. 1998).

■ Officer Donnelly, a sixteen-year veteran[4] of the Laramie Police Department, had made hundreds of stops of suspected drunk drivers. He received training in conducting, and instructed others to conduct, the horizontal gaze nystagmus test. He testified that he did not use the test in isolation to determine probable cause and did not attempt to use it as an extrapolation of Mr. Smith's blood alcohol concentration. Officer Donnelly also testified regarding his significant training in standardized field sobriety testing based on studies conducted by the National Highway Traffic Safety Administration.[5] This evidence was a sufficient foundation for the hearing examiner to conclude that the officer was adequately trained in the administration and assessment of the field sobriety tests.

Likewise the record was adequate to conclude that Officer Donnelly conducted the testing and assessment in substantial accordance with his significant training. He explained how the tests are to be administered and how he administered the three tests to Mr. Smith. He also explained the manner in which he determined the results of the tests.

■ Mr. Smith takes issue with the admissibility of the horizontal gaze nystagmus test results because nystagmus occurs naturally in a percentage of the population and can also be exacerbated by causes other than consumption of alcohol. He criticizes the walk and turn test administered by Officer Donnelly because he was not permitted to continue the test once he stopped and failed to understand the instructions due to windy conditions. He cites Officer Donnelly's failure to ask him if he had any physical impairments which might have impacted his performance on the walk and turn and the one-leg

stand[6] tests. Further, Mr. Smith maintains the test results were inaccurate because Officer Donnelly failed to give the horizontal gaze nystagmus test in the manner recommended by the National Highway Traffic Safety Administration manual. As correctly pointed out by the hearing examiner, these purported deficiencies in the administration of the sobriety tests go to the weight accorded the evidence and not to its admissibility.

> "The agency, as the trier of fact, is charged with *weighing the evidence and determining the credibility of witnesses.* The deference normally accorded to the findings of fact by a trial court is extended to the administrative agency, and the agency's decision as to the facts will not be overturned unless it is clearly contrary to the overwhelming weight of the evidence."

*Frazier v. State ex rel. Wyoming Workers' Safety and Compensation Division,* 997 P.2d 487, 490 (Wyo.2000) (quoting *Thomas v. Star Aggregates, Inc.,* 982 P.2d 714, 716 (Wyo. 1999)) (emphasis added & citation omitted).

Mr. Smith provided no evidence that he naturally experienced nystagmus or that he advised Officer Donnelly of any physical impairments or conditions which might have impacted his performance on any of the tests. He testified that he had gout in his toes, but provided no evidence which showed this condition affected his performance of the tests. No evidence was presented to support Mr. Smith's contention that windy conditions prevented him from understanding the walk and turn test instructions. Mr. Smith also asserts the unusual argument that, had he been permitted to complete the walk and turn test, he would have scored better than a three. This test is scored by adding points for every misstep. A zero means the test was performed without mistakes. The number of the score indicates the number of total errors. If the test had been continued, every additional step taken would have posed an

---

**4.** Officer Donnelly testified at the contested case hearing about his sixteen years of experience. The Order Upholding Implied Consent Suspension reflects a finding that Officer Donnelly was an eighteen-year veteran. This two-year difference is insubstantial as Officer Donnelly's testimony clearly established that he was an experienced career law enforcement officer.

**5.** The National Highway Traffic Safety Administration studies were specifically of the horizontal gaze nystagmus test, the walk and turn test, and the one-leg stand test.

**6.** The record reflects that Mr. Smith performed the one-leg stand test without error.

additional opportunity for Mr. Smith to err and obtain an increased score. Mr. Smith also provided no evidence that Officer Donnelly's failure to follow the test procedures as recommended in the National Highway Traffic Safety Administration manual rendered the results inaccurate.

Officer Donnelly's testimony was a sufficient foundation for the hearing examiner to determine that he conducted the testing and assessment in substantial accordance with his significant training, and we conclude there was no abuse of discretion by its admission into evidence.

## B. Substantial Evidence of Probable Cause Existed Without Field Sobriety Tests

■ Mr. Smith contends that, without the field sobriety test results, there was insufficient evidence to support the finding of probable cause for the warrantless arrest. Having concluded the tests were properly admitted, we could end our review without addressing this additional issue. However, it may be instructive for Mr. Smith to understand that this argument is equally unpersuasive and his license was lawfully suspended.

■ The party challenging the sufficiency of the evidence has the burden of demonstrating that the agency's decision was not supported by substantial evidence. *Butts v. Wyoming State Board of Architects*, 911 P.2d 1062, 1065 (Wyo.1996). "Probable cause for a warrantless arrest exists when, under the totality of the circumstances, a prudent, reasonable, and cautious peace officer would be led to believe that a crime has been or is being committed and that the individual arrested is the perpetrator." *Keehn v. Town of Torrington*, 834 P.2d 112, 116 (Wyo.1992); *see also Nellis*, 932 P.2d at 744. As its name implies, probable cause involves probabilities. These are factual, practical considerations of everyday life on which reasonable, prudent people, not legal technicians, act. *Seela v. Moore*, 603 N.W.2d 480, 484 (N.D.1999).

"[W]e do not disturb the decision of the hearing examiner unless a claimant ... can demonstrate that it was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. This rule affords the petitioner the opportunity to show that the findings of fact ... were contrary to the overwhelming weight of the evidence. *When an agency's action or decision is 'based on a consideration of relevant factors and is rational,' we will not rule that the action or decision is arbitrary or capricious. Mortgage Guaranty Ins. Corp. v. Langdon*, 634 P.2d 509, 520 (Wyo.1981)."

*Frazier*, 997 P.2d at 490 (quoting *Helm v. State ex rel. Wyoming Workers' Safety and Compensation Division*, 982 P.2d 1236, 1240 (Wyo.1999)) (emphasis added); *see also Shryack*, 3 P.3d at 854.

Officer Donnelly testified that he determined he had probable cause to believe Mr. Smith was operating a motor vehicle while intoxicated on the bases of the speeding violation, the admitted alcohol consumption, the odor of an alcoholic beverage, and his general observations of Mr. Smith's behavior in addition to the results of the field sobriety tests. Consistent with that evidence, the hearing examiner concluded probable cause existed based on Mr. Smith's exceeding the speed limit by almost fifty percent; his evasive and furtive behavior in rolling down the window only slightly upon being stopped; his inability to pass his license through the narrow opening demonstrating inadequate eye to hand coordination; his bloodshot, glassy eyes; the odor of an alcoholic beverage; his admission of drinking; and his failure of two out of three of the field sobriety tests.

Even without the field sobriety test results being considered, there is substantial evidence in the record to support the finding of probable cause. Prior to the advent of field sobriety tests, arrests based on probable cause were being made. Field sobriety tests have provided additional screening devices to better ensure the sufficiency of probable cause. They are additional tools, but are not indispensable to the evaluation. Probable cause can still be determined from the totality of the circumstances without consideration of field sobriety test results. *See Seela*, 603 N.W.2d at 484.

## CONCLUSION

The circumstances in this case justified a reasonable person to conclude Mr. Smith was intoxicated to the point that his ability to drive safely was impaired.

Affirmed.