IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| THE STATE OF WASHINGTON, | No. 86349-5-I |
| Respondent, | |
| v. | UNPUBLISHED OPINION |
| MICHAEL DAVID MURRAY, | |
| Appellant. | |

BOWMAN, A.C.J. — Michael David Murray appeals his jury conviction for failure to register as a sex offender. Murray argues insufficient evidence supports that he lacked a fixed residence, that the prosecutor committed misconduct during rebuttal closing argument, and that he received ineffective assistance of counsel. Because sufficient evidence supports Murray's conviction, he waived his claim of prosecutorial misconduct by failing to object, and he fails to show ineffective assistance of counsel, we affirm.

FACTS

In 2018, Murray was convicted of a felony sex offense, requiring him to register as a sex offender between October 24, 2022 and December 30, 2023. At the time of the conviction, the court provided Murray with notice of his registration requirements, explaining his registration obligations and warning him that failure to comply with those obligations is a criminal offense. Murray signed the document, acknowledging receipt.

On September 16, 2022, Murray was given another sex offender registration notification. That document again explained Murray's registration requirements, including that a "fixed residence" is

> a building that a person lawfully and habitually uses as living quarters a majority of the week. Uses as living quarters means to conduct activities consistent with the common understanding of residing, such as sleeping; eating; keeping personal belongings; receiving mail; and paying utilities, rent, or mortgage. . . . A shelter program may qualify as a residence provided it is a shelter program designed to provide temporary living accommodations for the homeless, provides an offender with a personally assigned living space, and the offender is permitted to store belongings in the living space.

And it explained that a person "lacks a fixed residence" when

> the person does not have a living situation that meets the definition of a fixed residence and includes, but is not limited to, a shelter program designed to provide temporary living accommodations for the homeless, an outdoor sleeping location, or locations where the person does not have permission to stay.

The notification also explained the reporting requirements for a person who lacks a fixed residence. It said:

> Offenders who lack a fixed residence and who are under the supervision of the department of corrections shall register in the county of their supervision. A person who lacks a fixed residence must report weekly, in person, to the sheriff of the county where he or she is registered.

Finally, the document advised Murray that "[i]f you move to a new address within the same county, you must provide . . . signed written notice of the change of address to the county sheriff within three business days of moving."

On October 20, 2022, Murray went to the "homeless check-in counter" at the former King County Administration Building and filled out a form titled "Change of Registration Information." The form has a section near the top labeled "Fixed

Residence Change of Information," which had been crossed out. Just below that section, the form has another section labeled "Lacking a Fixed Residence Information," which had been highlighted and filled out by Murray. He listed "Compass Center Shelter" (Compass) as a place "where [he] may be contacted" and put the shelter's address under the section titled "Name and Full Address of Shelter Where You Are Staying." Murray signed the document, initialing the paragraph that states:

> I understand that because I have registered as lacking a fixed residence, I must report weekly, in person, to the sheriff's office. As part of this weekly report, I must provide the sheriff's office with an accurate accounting of where I have stayed during the prior week, pursuant to RCW 9A.44.130(6)(b).

The next week, Murray did not check in with the King County Sheriff's Office. Nor did Murray check in during the months of November or December 2022. On December 19, 2022, the sheriff's office declared Murray to be noncompliant and "deactivated" his file. In February 2023, the State charged Murray with failure to register as a sex offender.

On December 13, 2023, the case proceeded to jury trial. Michelle Krivacek, the project program manager for the King County Sheriff's Office registered sex offender unit, testified about the general process of offender registry in King County. She explained that unit project managers meet with offenders at the time they register or request a change of address. The meeting typically takes 30 to 45 minutes. During that time, the manager ensures that the offender has been ordered to register and discusses individual registration requirements, including how to choose a residence status. Krivacek explained that "we have this one [Change of Registration Information] form and it covers the

3

two things. So depending on what we're using it for, we'll cross out the fixed address if we're going to fill out the bottom portion" for Lacking a Fixed Residence Information. And she told the jury that

> [a]ny change [of residence] that [the offender is] going to make, by law, should be within three days of it having changed. So if they're no longer transient and they do have an address, . . . we then would require them to come in and fill out a new form indicating that they are at an address and we remove the expectation of them to check in weekly.

Krivacek testified that she first registered Murray when he was released from prison. And that over time, she helped Murray with "probably five or six" of his registration forms at the homeless check-in counter. But a different project manager assisted Murray on October 20, 2022. Still, Krivacek reviewed Murray's September 16, 2022 registration notification and his October 20, 2022 Change of Registration Information form. And she explained that Murray registered as lacking a fixed address, filled out the Lacking a Fixed Residence Information section, and signed that section, including initialing the acknowledgment that he needed to check in with the sheriff's office weekly.

The State also called King County Sherriff's Office Detective Chris Knudsen to testify. Detective Knudsen also explained the general check-in requirements for people who lack a fixed residence. He testified that Murray's "most recent registration was as transient" and that Murray did not meet his registration requirements. Detective Knudsen also told the jury that he confirmed Murray was not in custody or registered to report in another county.

Murray did not testify. In closing arguments, he argued it was "entirely possible" that even if he lacked a fixed address at the time he registered, he later

4

"established residency status at Compass and thought he simply didn't need to report."

In rebuttal, the prosecutor responded that

if Mr. Murray's address had changed, if he had acquired fixed residency status at the Compass Center, as [Krivacek] explained, it would then be on Mr. Murray to go back to the King County Sheriff's Office within three days of that changing and change his address to a fixed address so he would not have to check in weekly anymore.

The jury convicted Murray as charged. Murray appeals.

ANALYSIS

Murray argues insufficient evidence supports his conviction for failure to register as a sex offender. He also argues that the prosecutor committed misconduct in rebuttal closing argument and that his attorney was ineffective by failing to object to the prosecutor's improper comments. We address each argument in turn.

1. Sufficiency of the Evidence

Murray argues insufficient evidence supports his conviction for failure to register because no evidence shows he lacked a fixed residence. So, according to Murray, the State failed to show that he needed to check in weekly with the Sheriff's office. We disagree.

We review sufficiency of the evidence de novo. *State v. Hummel*, 196 Wn. App. 329, 352, 383 P.3d 592 (2016). To determine whether sufficient evidence supports a conviction, we view the evidence in a light most favorable to the State and consider whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. DeJesus*, 7 Wn. App. 2d 849, 882, 436 P.3d 834 (2019). A sufficiency challenge admits the truth of the

State's evidence and accepts the reasonable inferences made from it. *State v. O'Neal*, 159 Wn.2d 500, 505, 150 P.3d 1121 (2007). And we defer to the fact finder on issues involving conflicting testimony, witness credibility, and the persuasiveness of the evidence. *DeJesus*, 7 Wn. App. 2d at 883.

Here, the State charged Murray with failure to register as a sex offender under RCW 9A.44.130 and former RCW 9A.44.132(1)(a)(ii) (2019).[1] The trial court instructed the jury that to convict Murray, the State must prove beyond a reasonable doubt that

> (1) Prior to October 24, 2022, Michael Murray was convicted of a felony sex offense;
> (2) That due to that conviction, Michael Murray was required to register in the [s]tate of Washington as a sex offender between October 24, 2022 and December 30, 2022; and
> (3) That during that time period, Michael Murray knowingly failed to comply with the requirement that Michael Murray, lacking a fixed residence, report weekly on a day specified by the county sheriff's office and during normal business hours, in person, to the sheriff of the county where Michael Murray is registered.

The court instructed the jury that a "fixed residence" means "a building that a person lawfully or habitually uses as living quarters a majority of the week." And that

> [a] shelter program may qualify as a residence provided it is a shelter program designed to provide temporary living accommodations for the homeless, provides an offender with a personally assigned living space, and the offender is permitted to store belongings in the living space. A personally assigned living

---

[1] A person convicted as a sex offender has a duty to register under RCW 9A.44.130(1)(a). Under former RCW 9A.44.132(1)(a)(ii), failure to register as a sex offender is a class C felony if the person has previously been convicted of a felony failure to register as a sex offender in this state. The court bifurcated the portion of the trial regarding Murray's past conviction, and the jury found he had previously been convicted of felony failure to register as a sex offender.

space may be an assigned bed or guaranteed space within a
common living area.

Finally, the court instructed the jury that "lacks a fixed residence" means

the person does not have a living situation that meets the definition
of a fixed residence and includes, but is not limited to, a shelter
program designed to provide temporary living accommodations for
the homeless, an outdoor sleeping location, or locations where the
person does not have permission to stay.

Here, the evidence shows that on October 20, 2022, Murray went to the homeless check-in counter at the King County Administration Building and filled out a Change of Registration Information form. Murray filled out and signed the section of the form labeled Lacking a Fixed Residence Information. And he initialed the paragraph that explained, "*I understand that because I have registered as lacking a fixed residence, I must report weekly, in person, to the sheriff's office.*" From this evidence, a rational juror could conclude beyond a reasonable doubt that Murray lacked a fixed residence during the charging period and that he needed to check in with the sheriff's office weekly.

Pointing to *State v. Batson*, 194 Wn. App. 326, 377 P.3d 238 (2016), Murray argues that sufficient evidence does not support his conviction because the State did not show that Compass was not a "fixed residence." In *Batson*, the court ordered the defendant Benjamin Batson to register as a felony sex offender. *Id.* at 328. Batson completed the registration forms, listed the "St. Martin de Porres Shelter" as his residence, and then did not report to the sheriff's office each week. *Id.*

The State charged Batson with failing to register as a sex offender. *Batson*, 194 Wn. App. at 328. At trial, the State argued that Batson lacked a fixed

7

address and needed to report weekly. *Id.* The State offered no direct evidence about where Batson lived during the charging period. *Id.* at 337. Instead, it called the director of the St. Martin de Porres program to rebut Batson's claim that he resided at the shelter. *Id.* at 328-29. The director testified generally about the shelter program but offered no testimony about Batson's specific living situation. *See id.* at 333-35. On appeal, we concluded that neither the director's testimony nor the evidence that the shelter had a waiting list and that Batson was recently released from jail were sufficient to show he did not reside at the shelter. *Id.* at 337-39.

This case in not like *Batson*. Murray did not register as having a fixed address at Compass. Instead, he registered as having no fixed address and listed Compass as a point of contact. As a result, the State had no burden to show that Compass was not Murray's fixed residence.

Murray also argues that no evidence shows that he knew the specific requirements for a shelter to qualify as a fixed residence when he filled out his registration documents. According to Murray, the evidence supports only that "an absent witness" in the registered sex offender unit concluded he lacked a fixed residence or proof of a fixed residence and directed Murray to sign documentation reflecting that conclusion. But on September 16, 2022, Murray acknowledged receipt of a document that explained the meaning of both "fixed residence" and "lacks a fixed residence." That sex offender registration notification form explained that a shelter program can qualify as a fixed residence if it is "designed to provide temporary living accommodations for the homeless, provides an offender with a personally assigned living space, and the offender is permitted to

store belongings in the living space." And the document explained that "lacks a fixed residence" can include "a shelter program designed to provide temporary living accommodations for the homeless."[2]

Viewed in a light most favorable to the State, a rational juror could conclude from this evidence that Murray knew the definition of "fixed residence" and affirmatively indicated that he had none.

2. <u>Ineffective Assistance of Counsel</u>

Murray argues that his lawyer was ineffective for "failing to object to the prosecutor's burden-shifting" during rebuttal closing argument.[3] We disagree.

An ineffective assistance of counsel claim presents mixed questions of law and fact that we review de novo. *State v. K.A.B.*, 14 Wn. App. 2d 677, 707, 475 P.3d 216 (2020) (citing *State v. Linville*, 191 Wn.2d 513, 518, 423 P.3d 842 (2018)). The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011) (citing *Strickland v. Washington*, 466 U.S. 668, 685-86, 104 S. Ct. 2052, 80 L. Ed. 2d

---

[2] As much as Murray argues that the information in the registration notifications is inadequate, confusing, or too complex, those issues go to the weight of the evidence. And again, we do not weigh evidence on appeal. *DeJesus*, 7 Wn. App. 2d at 883.

[3] Murray also argues that the prosecutor's statements amount to prosecutorial misconduct. But Murray did not object to the prosecutor's statements at trial. So, to prevail on a claim of prosecutorial misconduct raised for the first time on appeal, Murray must show that the conduct was "so flagrant and ill intentioned that an instruction could not have cured the resulting prejudice." *State v. Emery*, 174 Wn.2d 741, 760-61, 278 P.3d 653 (2012). Here, the court could have instructed the jury to disregard the alleged improper statement. And we presume that a jury follows the courts instructions. *State v. Sullivan*, 3 Wn. App. 2d 376, 380, 415 P.3d 1261 (2018). Because an instruction could have cured any misconduct, Murray waives his prosecutorial misconduct argument. *Emery*, 174 Wn.2d at 760-61.

674 (1984)).  Washington courts apply the two-prong *Strickland* test to determine whether a defendant has a valid ineffective assistance of counsel claim.  *State v. Jefferies*, 105 Wn.2d 398, 417-18, 717 P.2d 722 (1986).  Under *Strickland*, a petitioner must show both that (1) defense counsel's performance was deficient and (2) the deficient performance resulted in prejudice.  466 U.S. at 687.

A petitioner proves deficient representation by showing that defense counsel's performance fell " 'below an objective standard of reasonableness based on consideration of all the circumstances.' "  *State v. Estes*, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017) (quoting *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995)).  The petitioner must overcome the strong presumption that trial counsel's representation was reasonable.  *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).  "Defense counsel's failure to object to a prosecutor's closing argument will generally not constitute deficient performance because lawyers 'do not commonly object during closing argument absent egregious misstatements.' "  *In re Pers. Restraint of Cross*, 180 Wn.2d 664, 721, 327 P.2d 660 (2014)[4] (quoting *In re Pers. Restraint of Davis*, 152 Wn.2d 647, 717, 101 P.2d 1 (2004)), *abrogated on other grounds by State v. Gregory*, 192 Wn.2d 1, 427 P.3d 621 (2018).  To show prejudice, a defendant must show there is a reasonable probability that except for counsel's unprofessional errors, the results of the proceeding would have been different.  *McFarland*, 127 Wn.2d at 335.

We have repeatedly held that a prosecutor commits misconduct by burden-shifting in closing argument.  *See State v. Johnson,* 158 Wn. App 677, 685, 243

---

[4] Internal quotation marks omitted.

P.3d 936 (2010); *State v. Venegas*, 155 Wn. App. 507, 524-25, 228 P.3d 813 (2010). But here, the prosecutor's comments did not impermissibly shift its burden to Murray.

In closing arguments, Murray argued that it was possible he "established residence status at Compass and thought he simply didn't need to report." In rebuttal, the prosecutor stated that if Murray acquired fixed residence at Compass, "it would then be on Mr. Murray to go back to the King County Sheriff's Office within three days . . . and change his address to a fixed address so he would not have to check in weekly anymore."

Under RCW 9A.44.130(5)(a), a person required to register must notify the county sheriff within three business days of changing "his or his residence address within the same county." Because Murray registered as having no residence address, if he gained residence at Compass, he needed to notify the sheriff's office of that change. Indeed, Krivacek testified without objection that transient residents who gain a fixed address must notify the sheriff's office. She said that notice of "[a]ny change" in address, "by law," must be made "within three days of it having changed." And that the person is required "to come in and fill out a new form indicating that they are at an address and we remove the expectation of them to check in weekly."

Murray argues that in any event, the prosecutor misstated the law because there are no statutory requirements for people registered as transients staying at a specific address to notify the sheriff's office when they attain a "fixed residence" at the same address. But a person who registers as lacking a fixed residence, as Murray did here, necessarily changes address when he attains a fixed residence,

11

no matter whether he was "staying" at the same address. And the plain language of RCW 9A.44.130(5)(a) required Murray to notify the sheriff of any change of his residence address.

The prosecutor's statements during rebuttal closing argument were both an accurate statement of the law and grounded in testimony elicited at trial. Murray's attorney was not deficient for failing to object.

Because sufficient evidence shows that Murray lacked a fixed residence, he waived his claim of prosecutorial misconduct by failing to object, and he fails to show ineffective assistance of counsel, we affirm his conviction.

_____, ACJ

WE CONCUR:

_____        _____