946 P.2d 808 (1997)
In the Matter of the Worker's Compensation Claim of STATE of Wyoming ex rel. WYOMING WORKERS' COMPENSATION DIVISION, Appellant (Objector/Defendant),
v.
Lloyd Nelson WAGGENER, Appellee (Employee/Claimant).
In the Matter of the Worker's Compensation Claim of D & S CASING SERVICE, INC., Appellant (Employer/Objector),
v.
Lloyd Nelson WAGGENER, Appellee (Employee/Claimant).
Nos. 96-332, 96-333.
Supreme Court of Wyoming.
October 28, 1997.
*809 William U. Hill, Attorney General; John W. Renneisen, Deputy Attorney General; Gerald W. Laska, Senior Assistant Attorney General; and Bernard P. Haggerty, Assistant Attorney General, for appellant State.
John M. Daly of Daly Law Associates, P.C., Gillette, for appellant D & S Casing Service.
Jeremy D. Michaels of Michaels & Michaels, Gillette, for appellee.
Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.
MACY, Justice.
Appellants State of Wyoming (the State), on behalf of the Wyoming Workers' Compensation Division, and D & S Casing Service, Inc. (the employer) appeal from the district court's order which affirmed the hearing examiner's decision to award medical benefits to Appellee Lloyd Nelson Waggener (the claimant).
We affirm.

ISSUES
The State presents the following issues for our review:
A. Whether the Hearing Examiner's decision to permit the Claimant to reopen his case and present new medical evidence after all parties had rested their cases was arbitrary, capricious, an abuse of discretion, and contrary to law.
B. Whether the Hearing Examiner's finding that the Claimant met his burden of proof pursuant to Wyo. Stat. § 27-14-603(a) (1991) was unsupported by substantial evidence.
*810 The employer also presents a substantial evidence issue:
Was the Hearing Examiner's decision supported by substantial evidence?

FACTS
The claimant began working for the employer in Gillette in December of 1991. In July of 1992, the employer sent him to Rock Springs to open a branch office. Although the claimant worked five days a week while he was in Gillette, once he got to Rock Springs, he worked ten to twelve days at a time, and the days were longer than the ones he worked in Gillette. He had to drive a lot and was on call at night. He initially stayed in his own motel room in Rock Springs, but in October the employer required that he and the other employees move into the employer's doublewide trailer. At times, seven or eight employees, along with several children, were living in the trailer, and privacy was difficult to achieve.
The claimant traveled to Gillette on Christmas eve with his son, who also worked for the employer. During this trip, the claimant told his son that he was not happy with the living conditions and that he was not satisfied with his job. He said that he might not be working for the company much longer and that he was going to talk to the employer about the situation. When the claimant arrived at his home, he unloaded his personal items and tool boxes from the company pickup. The claimant subsequently met with the employer, and, during that meeting, he suffered a ruptured brain aneurysm.
The claimant's wife filed an injury report in January of 1993, indicating that the claimant suffered a brain aneurysm while he was working as a sales representative for the employer. The injury report stated: "Lloyd has been under a great deal of work stress. During a meeting to discuss problems with his emplo[y]er, he suffered an aneurysm." The employer objected, claiming: "[The claimant] was sitting in a chair visiting. He drove to [Gillette] from [Rock Springs] that day was all he did[.] He did no physical labor[;] he had been back in [Gillette] over 2 [hours] when he stopped by to visit."
The claim was referred to the Office of Administrative Hearings, and on March 8, 1993, the hearing examiner issued an order which set a hearing date of June 3, 1993, and required the parties to submit disclosure statements. The order also invited the parties to brief issues of law in their disclosure statements and encouraged the parties to submit response briefs prior to the hearing.
During the morning of May 18, 1993, the State deposed Lee Krauth, M.D., the neurosurgeon who performed the claimant's surgery. Dr. Krauth was examined extensively with regard to what he believed had caused the claimant's aneurysm to rupture. Generally, Dr. Krauth testified that, from the history he had received, he understood that the claimant was under a lot of stress. He thought that the heated argument which the claimant supposedly had with his employer precipitously increased his blood pressure and that the abrupt increase in his blood pressure caused the aneurysm to rupture. When he was asked whether aneurysms ever spontaneously rupture without an identifiable precipitating event being present, Dr. Krauth responded that they do but not frequently. He further indicated that he based his opinion with regard to the rupture being work-related on his understanding that the claimant had argued with his employer while he was on the job.
During the afternoon of May 18, 1993, the State deposed Roger Williams, M.D., the neurologist who treated the claimant before he went to Dr. Krauth for surgery. Dr. Williams testified that high blood pressure, smoking, and alcohol use are factors which could increase the risk of an aneurysm bursting. He cited various medical journal articles to support his testimony. During the cross-examination, Dr. Williams testified that it was possible for a specific precipitating event to be associated with the rupture of an aneurysm but that "it's trivial and almost nonsensical to discuss it."
The claimant filed his disclosure statement on May 20, 1993, in which he objected to scientific evidence being considered that was not supported by an appropriate learned treatise. The employer and the State also submitted disclosure statements, and, although *811 they listed Dr. Williams's deposition as an exhibit, they did not list the medical journal articles that the doctor had referred to. On June 2, 1993, however, the employer filed a memorandum of law which discussed the four medical journal articles that Dr. Williams cited in his deposition. Copies of the articles were attached to the memorandum. The employer delivered the memorandum, along with the copies of the articles, to the claimant's counsel's office after business hours on June 2nd.
The contested case hearing commenced on the morning of June 3, 1993. The hearing examiner mentioned that he had read the medical journal articles which were attached to the employer's memorandum and that he had received the memorandum after five o'clock on the previous night. The claimant's counsel objected to the articles, stating that he left his office at five o'clock the night before and had not seen the employer's memorandum or the attached articles. He maintained that, as a result, he was "completely unprepared to rebut at this junction. If the [hearing examiner is] going to consider it, I would ask for a continuance to do research." The hearing examiner responded: "[T]his case will be taken under advisement in any event, and I will give you an opportunity to file whatever you want in response or to renew your objection to consideration of those or to, if you feel you need to offer additional evidence to rebut or to respond to those, I will consider that."
After the opening arguments, the claimant stated that, because the hearing examiner indicated that he would be given an opportunity "to not necessarily rebut but supplement those medical findings," he was not going to call Dr. Krauth as a witness that morning and that he would, instead, offer only the doctor's deposition testimony.
At the close of the evidence, the hearing examiner informed the parties that he would be considering the medical journal articles and that he would give the claimant time to comment on the articles, offer additional articles, or respond in any appropriate manner. The State asked whether it would be given the same opportunity, and the hearing examiner answered affirmatively.
At a July 12, 1993, hearing to consider a motion to strike the medical journal articles, the hearing examiner decided to exclude the articles because all the parties agreed that a proper foundation had not been laid and because he had forgotten what was in them. The hearing examiner also considered the claimant's request to present additional testimony from Dr. Krauth even though the articles were being disregarded. The State objected, arguing that the claimant had his opportunity to present testimony from Dr. Krauth and that, because he had chosen not to do so at that time, he should not be given
"`two bites out of the apple'" ..., having now seen and heard the extent of the Employer's defense, the extent of the Division's defense, he wants to go back and put on not rebuttal evidence, but as he's arguing here today, new evidence. And I think that's patently unfair to the Division and Employer in this case.
The hearing examiner granted the claimant's request, reasoning:
My recollection was that at the hearing, although you rested, that was with the understanding based upon my ruling prior to the time that you rested that you would be given an opportunity to rebut this evidence.
I didn't take that resting to be sort of like the normal resting where you're done presenting evidence. It was my understanding that you would have an opportunity to rebut these articles.
....
Notwithstanding [the State's] concern that I may be off on an investigative mission with this case, I do not feel that I have all the evidence in front of me that I would like to have.
I do feel that there was some confusion at the beginning of the hearing for two reasons, one was dealing with these exhibits and what to do with them, since at that point I had just finished reading two and a half of them.
The second issue was my perception prior to the hearing that this case involved a sudden argument, which the evidence is clear to me there is no substantial evidence *812 of any sudden argument on December 24. And I will find that there is no substantial evidence that there was any argument between [the claimant] and [his employer].
So based on what I thought the evidence was going to show in this caseand I'll tell you I've learned a little from thisand the articles, I announced some preliminary Findings at the hearing which I think confused and misled [the claimant] somewhat, may have confused and misled the rest of you.
In retrospect I won't be doing that again.
Because of that, I think almost certainly this case is going up on appeal one way or the other.
In the exercise of discretion and maybe even in affording some liberal interpretation of the Statutes and Rules in favor of the Employee, and because I really want to hear what Dr. Krauth says about the real evidence in this case, I'm going to allow [the claimant] to call Dr. Krauth.
Both of you will have at least some opportunity to cross-examine him based upon his prior deposition. If at the end of that testimony you feel you've been surprised, I'll hear that then.
On August 10, 1993, the hearing examiner heard additional testimony from Dr. Krauth who testified that, to a reasonable degree of medical probability, even without a "major blow-up" occurring, the claimant driving across the state and stewing about a meeting with his employer were "consistent with raising his blood pressure to the point where [the aneurysm] burst or gave way." He also stated that he was not qualified to discuss the causes of emotional stress but that he could say emotional stress can cause an increase in blood pressure.
During and after the cross-examination of Dr. Krauth, the hearing examiner explained to Dr. Krauth that he had determined that, although the evidence did not show an argument or disagreement occurred during the meeting when the aneurysm burst, the claimant was experiencing stress in connection with his job. The hearing examiner asked Dr. Krauth to base his answers and opinions on that finding. During the redirect examination, basing his opinion on the hearing examiner's finding, Dr. Krauth testified that the claimant's work "contributed materially to the rupture of his aneur[y]sm." Both the employer and the State decided not to present evidence in response to Dr. Krauth's additional testimony.
The hearing examiner found that the claimant suffered a preexisting aneurysm, that work-related stress from October to December of 1992 materially aggravated the claimant's aneurysm, and that work-related stress on December 24, 1992, was the major cause of the aneurysm's rupture. Accordingly, the hearing examiner concluded that the claimant had met his burden of proof pursuant to WYO. STAT. § 27-14-603(a) (1997) and found that his injury was compensable.
The State and the employer sought the district court's review of the hearing examiner's decision. The district court affirmed the hearing examiner's decision, and the State and the employer appeal to this Court.

STANDARD OF REVIEW
W.R.A.P. 12.09(a) provides that judicial review of administrative decisions is limited to a determination of the matters which are specified in WYO. STAT. § 16-3-114(c) (1997). Section 16-3-114(c) provides in pertinent part:
(c).... The reviewing court shall:
...
(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;
...
(E) Unsupported by substantial evidence in a case reviewed on the record of an agency hearing provided by statute.

DISCUSSION

A. Abuse of Discretion
The State and the employer contend that the hearing examiner's decision to permit *813 the claimant to reopen his case and present new medical evidence after all the parties had rested their cases was arbitrary, capricious, an abuse of discretion, and contrary to law. The claimant counters that Dr. Krauth's direct examination was properly postponed until the doctor could be provided with the medical journal articles which the employer had submitted after five o'clock on the evening before the trial.
Determinations regarding the order of witnesses and testimony are within the sound discretion of the hearing examiner. "`[T]he trial court is allowed considerable latitude in the exercise of its discretion in that respect.'" State v. Alexander, 78 Wyo. 324, 324 P.2d 831, 839 (1958), cert. denied, 363 U.S. 850, 80 S.Ct. 1630, 4 L.Ed.2d 1733 (1960) (quoting Russell v. State, 19 Wyo. 272, 284, 116 P. 451, 454 (1911)). "[M]any trial courts are quite liberal in determinations relating to the order of proof and the presentation of evidence, and we are tolerant of the informality of many trial proceedings." Stauffer Chemical Company v. Curry, 778 P.2d 1083, 1098 (Wyo.1989). The trial court may, in its discretion, permit case-in-chief evidence to be presented during rebuttal, and the reviewing court will not interfere except in cases where the trial court has clearly abused its discretion. Davis v. Consolidated Oil & Gas, Inc., 802 P.2d 840, 846 (Wyo. 1990). Reversal is not warranted unless the party's substantial right has been prejudiced. 802 P.2d at 845. "The rules vest in the court a large discretion which is necessary to an efficient and orderly trial process." McCabe v. R.A. Manning Construction Co., Inc., 674 P.2d 699, 712 (Wyo.1983).
An administrative agency acts arbitrarily or capriciously, or otherwise abuses its discretion, when it willfully and unreasonably acts without considering the facts and circumstances. Corman v. State ex rel. Wyoming Workers' Compensation Division, 909 P.2d 966, 971 (Wyo.1996). In evaluating whether an administrative agency abused its discretion by acting arbitrarily or capriciously, we examine the action to determine whether the agency considered relevant factors in making its decision and whether the decision is rational. Id.
The claimant did not call Dr. Krauth during his case in chief because the medical journal articles had been delivered late. At the start of the hearing, the hearing examiner stated that he had read some of the articles and that he had decided to consider them in making his final decision. He, therefore, allowed the claimant to delay calling Dr. Krauth until the doctor could be provided with the articles. Even though in hindsight it would have been proper to have called Dr. Krauth during the first hearing because the articles were subsequently stricken, the situation in which the claimant decided to postpone Dr. Krauth's testimony indicated that it would be appropriate to continue his testimony until a future date. The claimant could not have gone ahead with a complete direct examination of Dr. Krauth without first letting the doctor review the articles. We agree with the claimant that fairness required that he be given a later opportunity to present Dr. Krauth's testimony as a part of his case in chief even though the articles were subsequently stricken.
Furthermore, the State and the employer have failed to demonstrate how postponing the presentation of Dr. Krauth's testimony prejudiced a substantial right. They had a chance to cross-examine Dr. Krauth and the opportunity to present other evidence to challenge the doctor's testimony. They chose, however, not to do so. We concur with the district court's statements:
Procedural rules are intended to permit a comprehensive presentation of all relevant evidence in an orderly and efficient manner. Sometimes the goal of a full and adequate airing of facts and argument collides with the goal of efficiency and orderliness, but the ultimate purpose remains solid, immutableconsidered choice, objective justice. Sometimes we forget that the rule book is intended, not merely to define the order of battle and serve as a convenient yardstick by which winners and losers are measured, but to facilitate a process which, more often than not, achieves a just result. That can occur only if the hearing [examiner] has discretion to apply the rules with some flexibility.
*814 We hold that the hearing examiner's decision was rational and that it was made after he considered the relevant factors in this case. The hearing examiner, therefore, did not abuse his discretion when he allowed the claimant to postpone presenting Dr. Krauth's testimony.

B. Substantial Evidence
The State and the employer complain that substantial evidence did not support the hearing examiner's finding that the claimant had met his burden of proof pursuant to § 27-14-603(a).
The claimant has the burden of proving every essential element of his claim by a preponderance of the evidence. Goddard v. Colonel Bozeman's Restaurant, 914 P.2d 1233, 1236 (Wyo.1996). Under the statutory definition of injury, he must prove that his injury arose out of and in the course of his employment. WYO. STAT. § 27-14-102(a)(xi) (1997). Whether an employee's injury occurred in the course of his employment is a question of fact. Goddard, 914 P.2d at 1236. We review an administrative agency's findings of fact by applying the substantial evidence standard. Section 16-3-114(c)(ii)(E). Our task is to examine the entire record to determine whether substantial evidence supported the hearing examiner's findings. Goddard, 914 P.2d at 1236. We will not substitute our judgment for that of the hearing examiner when substantial evidence supports his decision. Id. Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. Id. When we analyze a substantial evidence issue, we assume that the evidence in favor of the prevailing party is true, giving that party's evidence every favorable inference which may reasonably and fairly be drawn from it, and we leave out of consideration entirely the unsuccessful party's conflicting evidence. Clark v. State ex rel. Wyoming Workers' Safety and Compensation Division, 934 P.2d 1269, 1272 (Wyo.1997).
The hearing examiner determined that this injury occurred over a period of time. Section 27-14-603(a) governs the burden of proof in such cases:
(a) The burden of proof in contested cases involving injuries which occur over a substantial period of time is on the employee to prove by competent medical authority that his claim arose out of and in the course of his employment and to prove by a preponderance of evidence that:
(i) There is a direct causal connection between the condition or circumstances under which the work is performed and the injury;
(ii) The injury can be seen to have followed as a natural incident of the work as a result of the employment;
(iii) The injury can fairly be traced to the employment as a proximate cause;
(iv) The injury does not come from a hazard to which employees would have been equally exposed outside of the employment; and
(v) The injury is incidental to the character of the business and not independent of the relation of employer and employee.
The fact that the claimant was not able to remember what occurred at the employer's office because of his ruptured aneurysm complicated the factual determinations in this case. The employer testified that no argument or violent outburst occurred during the meeting. Accordingly, the hearing examiner made an early finding of fact that the evidence did not demonstrate that an argument or outburst occurred. The evidence did, however, demonstrate that the claimant worked very hard and that his working conditions left him exhausted and stressed. The claimant's son testified that the claimant was unhappy with his work situation. The claimant's wife also testified that the claimant was unhappy with the long hours, the stressful living conditions, and the loss of privacy. She said that, when the claimant came home, he seemed exhausted and depressed. Additionally, although the claimant could not recall what had happened during his meeting with the employer, he did testify about various things regarding his employment which caused him stress. Furthermore, both doctors testified that psychological stressors could cause blood pressure to increase which *815 in turn could cause a preexisting aneurysm to burst. Dr. Krauth opined that, to a reasonable medical probability, the work-related stressors documented throughout this case, which included the long sequence of work days followed by a long drive and the anticipation of a stressful meeting with the employer, caused the aneurysm to rupture. We conclude that substantial medical and factual evidence supported the hearing examiner's determination that this was a compensable injury.
Affirmed.