Robert BRIGHT, Appellant
(Employee–claimant),

v.

SHEEHAN PIPELINE, Appellee
(Employer–Respondent),

and

State of Wyoming ex rel. Wyoming Workers' Safety and Compensation Division, Department of Employment, Appellee (Respondent). Representing the Appellant:

No. 97–265.

Supreme Court of Wyoming.

June 11, 1998.

Donald L. Painter, Casper, for Appellant (Employee-Claimant)

David A. Drell of Brooks, Henley & Drell, P.C., Casper, for Appellee Sheehan Pipeline.

William U. Hill, Attorney General; John W. Renneisen, Deputy Attorney General; Gerald W. Laska, Senior Assistant Attorney General; and Bernard P. Haggerty, Assistant Attorney General, for Appellee State of Wyoming.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

MACY, Justice.

The hearing examiner denied the claim submitted by Appellant Robert Bright (the employee) for worker's compensation benefits. The employee filed a petition for review with the district court, and the district court certified the case to the Wyoming Supreme Court pursuant to W.R.A.P. 12.09(b).

We affirm the hearing examiner's decision.

### ISSUE

The employee requests our review of the following issue:

1. Whether Appellant is barred from recovery of benefit because of a pre-existing condition under W.S.1977 § 27–14–102(a)(xi)(F).

## FACTS

Before going to work for Appellee Sheehan Pipeline (the employer), the employee worked as a professional rodeo bull rider. In 1994, the employee suffered a dislocation of his right shoulder when a bull stepped on him. He underwent surgery on the right shoulder to repair the dislocation. In 1995, while he was working for a previous employer, the employee again dislocated his right shoulder when a desk fell over on him. The employee underwent a second surgery on his right shoulder. Both surgeries were conducted to correct a congenital defect. People with this defect have shallow sockets which make them more prone to having shoulder dislocations.

In May of 1996, the employee dislocated his left shoulder when the bull he was riding jumped into the air and fell onto its side, landing on the employee's leg. The employee's body was thrown to the ground with his left arm extending upward. The shoulder was treated with physical therapy.

The employee began working for the employer on September 15, 1996, as a welder's helper. On October 30, 1996, the employee slipped in some mud and fell against a pipe, dislocating his left shoulder. The shoulder was dislocated for a couple of seconds, but it popped back into place by itself. The following day, the employee saw a doctor who recommended that ice be put on the shoulder, that the employee take medication, and that his duty for the next day be light. The employee's shoulder dislocated again that evening during his sleep, and the employee quit his job the next day. On November 7, 1996, the employee visited Boyd Maxfield Iverson, M.D., the surgeon who had performed his right shoulder surgeries. Dr. Iverson diagnosed a post traumatic dislocation with recurrent subluxation of the left shoulder and prescribed two weeks of physical therapy. When the shoulder did not improve with physical therapy, Dr. Iverson performed surgery on it.

The employee filed an injury report and requested medical and temporary total disability benefits. The employer and the Workers' Compensation Division objected, claiming that the employee had previously injured his shoulder in a bull riding accident and that, therefore, the employee's shoulder condition was not work related. A hearing was held, and the hearing examiner denied benefits after finding that the employee's injury was the result of a preexisting condition and that he had not demonstrated his fall against the pipe was a material aggravation of the preexisting condition. The employee petitioned the district court for a review of the case, and the district court certified the case to this Court.

## DISCUSSION

The hearing examiner found that the employee's shoulder injury was not a material aggravation of a preexisting condition which had been caused by his employment. The employee claims that substantial evidence did not support that finding. Because the employee does not contest that he had a preexisting condition, we only need to decide whether that condition was materially aggravated by the employee's employment.

W.R.A.P. 12.09(a) limits judicial review of administrative decisions to a determination of the matters which are specified in WYO. STAT. § 16-3-114(c) (1997). Under the worker's compensation statutory scheme, an injury does not include "[a]ny injury or condition preexisting at the time of employment with the employer against whom a claim is made." WYO. STAT. § 27-14-102(a)(xi)(F) (1997). A preexisting condition may, however, be compensable if the employment aggravated, accelerated, or combined with the preexisting condition to produce the disability for which the employee is seeking benefits. *State ex rel. Wyoming Workers' Compensation Division v. Fisher*, 914 P.2d 1224, 1227 (Wyo.1996).

Whether a preexisting condition has been aggravated by the employment is a question of fact. *Corman v. State ex rel. Wyoming Workers' Compensation Division*, 909 P.2d 966, 972 (Wyo.1996). We review an administrative agency's findings of fact by applying the substantial evidence standard. Section 16-3-114(c)(ii)(E). Our task is to examine the entire record to determine whether substantial evidence supported the

hearing examiner's findings. *State ex rel. Wyoming Workers' Compensation Division v. Waggener,* 946 P.2d 808, 814 (Wyo.1997). We will not substitute our judgment for that of the hearing examiner when substantial evidence supports her decision. *Id.* Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. *Id.*

The employer's expert medical witness, Dan Blake Greer, M.D., reviewed the employee's medical records and determined that the employee suffered from a congenital defect known as chronic dislocation of the left shoulder caused by a shallowness of "the glenoid fossa of the socket that the bone of the upper arm moves into. And it's shallow enough that it will dislocate easily." Dr. Greer said that the fact that the surgeries on the employee's right shoulder were performed to correct the same condition, coupled with the physical therapists' records which indicated that the "[p]atient is dislocating currently his shoulder and just in October experienced his 4th dislocation," supported his diagnosis. He also stated that the employee's ability to relocate his shoulder without anesthesia and reduction after it dislocated further confirmed that the employee had a chronic recurrent condition, explaining that, when a normal shoulder dislocates, it is impossible to pop it back in without anesthesia and reduction. Dr. Greer testified that, once a person with this type of condition dislocates his shoulder, subsequent dislocations may occur with minimal trauma.

Dr. Iverson testified that the employee's explanation of the October 30, 1996, incident was consistent with the left shoulder injury that he treated. He, however, had not been informed about the May 1996 dislocation and admitted that he based his opinion about causation upon the medical history which the employee had given. When he was presented with the possibility that the employee had suffered a previous dislocation in his left shoulder, Dr. Iverson said that he was "not going to start making assumptions about anything." He, therefore, did not render an opinion about whether the employee's shoulder problem could have existed before this incident occurred. He did agree with Dr. Greer's opinion that, once a person has suffered a dislocation, he is more likely to have subsequent dislocations.

The only expert medical evidence which supported the employee's claim that the fall against the pipe substantially aggravated his condition was Dr. Greer's statement that "it was possible. The majority of Dr. Greer's testimony, however, indicated that the October 30th dislocation was simply the result of the natural progress of the underlying shallow shoulder socket and that the employee's surgery was performed to correct this congenital condition rather than to treat a work-related injury.

The evidence demonstrated that the October 30th injury resulted from the natural and normal progress of the preexisting congenital condition rather than from a material aggravation of that condition. The employee's shallow shoulder socket made dislocation of the shoulder more likely before the shoulder was ever injured. The May 1996 bull riding fall which dislocated the employee's left shoulder made the shoulder even more susceptible to being dislocated with minimal trauma. Accordingly, we hold that substantial evidence supported the hearing examiner's decision.

Affirmed.