2005 WY 11

**Irene HICKS, Appellant (Employee/Petitioner),**

v.

**STATE of Wyoming, ex rel., WYOMING WORKERS' SAFETY AND COMPENSATION DIVISION, Appellee (Objector/Respondent).**

No. 04–2.

Supreme Court of Wyoming.

Feb. 4, 2005.

---

Representing Appellant: Donald Lee Tolin, Law Offices of Donald Tolin, Casper, Wyoming.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; John W. Ren-neisen, Deputy Attorney General, Steven R. Czoschke, Senior Assistant Attorney General; and Kristi M. Radosevich, Assistant Attorney General. Argument by Ms. Radosevich.

Before HILL, C.J., and GOLDEN, LEHMAN, KITE, and VOIGT, JJ.

HILL, Chief Justice.

[¶ 1] Irene Hicks (Hicks) appeals from an order of the Workers' Compensation Medical Commission (the Medical Commission) denying her request for worker's compensation benefits for a September 2001 spinal fusion surgery that, she claimed, was the product of a work-related injury she suffered in July 1998. The Medical Commission concluded that Hicks was not a credible witness, and that she had failed in her burden of proving causation, as substantial evidence showed that Hicks' work-related injury had resolved before her surgery. We affirm.

## ISSUES

[¶ 2] Hicks presents three issues in her brief:

1. Did the District Court err in denying [Hicks] benefits under the Workers' Compensation Act including the costs for her September 17, 2001 fusion surgery that her doctors determined was necessary and causally connected to her of her [sic] July 1, 1998 work related injury?

2. Did the District Court err in upholding the decision of the Medical Commission which acted in an arbitrary, capricious, and in an abuse of discretion, otherwise not in accordance with the law, manner by totally disregarding the totality of the circumstances including the overwhelming evidence at the contested case hearing in support of [Hicks], by misconstruing and misapplying the evidence to attack [her] credibility, by willfully discounting substantial credible evidence from [her] treating doctors, by not allowing certain testimony in, and by inappropriately relying upon mere speculation and conjecture from the Division's "hired gun" who did only a fifty (50) minute paper document review

without ever doing an independent medical examination of [Hicks]?

3. Has [Hicks'] constitutional and due process rights been violated by the District Court in upholding the decision of the Medical Commission which overlooked the Division's inconsistent determination that [she] sustained a compensable work related injury on July 1, 1998, but denied her benefits under the Act for her necessary treatment including her September 17, 2001 surgery, even though she met her burden of proof before the Medical Commission?

The Wyoming Workers' Safety and Compensation Division (the Division) significantly restates the issues:

I. A claimant applying for workers' compensation benefits must prove that each additional claim is related to her employment injury. The Medical Commission Hearing Panel determined that Ms. Hicks' medical complaints subsequent to August 29, 2001, were not related to a compensable injury, but rather, due to her preexisting condition. Is the Medical Commission Hearing Panel's decision denying benefits supported by substantial evidence?

II. Ms. Hicks claims the Medical Commission Hearing Panel acted arbitrarily and capriciously by determining witness credibility, weighing the evidence and by discounting certain conflicting medical opinions. Is a challenge to these factual determinations more appropriately reviewed under the substantial evidence test since both parties presented evidence at the contested case hearing?

III. Ms. Hicks alleges the Medical Commission Hearing Panel violated her constitutional due process rights, however, she fails to present a proper constitutional claim. Should this Court refuse to consider the alleged constitutional error because it is not supported with appropriate constitutional analysis or authority?

## FACTS

[¶ 3] Hicks has suffered two work-related back injuries. In 1997 Hicks was working at a motel when she fell off a chair and hit her back on a table. Hicks suffered a mild ante-rior compression fracture. The injury was successfully resolved through chiropractic treatment. While Hicks was being treated for this injury, an examination revealed a congenital spinal defect—spondylolysis with a pars defect in her right side at L5.

[¶ 4] On July 1, 1998, Hicks was working as a certified nursing assistant when she hurt her back while lifting a patient. Conservative handling of the injury was attempted, beginning with medication and chiropractic treatment. After that course of treatment was unsuccessful, Hicks was referred to physical therapy in January of 1999. Hicks' initial commitment to physical therapy was called into question when she was discharged from physical therapy on February 4, 1999, for noncompliance with her doctor's prescribed orders after she missed six of eleven scheduled appointments during the first month of treatment. Nevertheless, Hicks was quickly readmitted to physical therapy and she participated, though with continued periodic absences, until early April of 1999 when she completely ceased attending and was again discharged.

[¶ 5] Dr. Anne MacGuire evaluated Hicks for an impairment rating in May of 1999. Hicks was assigned a zero percent impairment rating for her July 1998 back injury. She sought a second opinion from Dr. Terry Brown, who assigned a five percent impairment rating. As a result of the July 1998 injury, Hicks received temporary total disability benefits for the period of July 16, 1998, to April 30, 1999, and permanent partial impairment benefits in October and November of 1999.

[¶ 6] From Hicks' last physical therapy session in early April of 1999 until March 1, 2000, there is no record of any medical treatment for Hicks' back injury. Hicks endured several other unrelated medical difficulties during that period, including thyroid problems, complications from morbid obesity, and cysts that at one point necessitated emergency surgery. Then, on March 1, 2000, Hicks visited Dr. Jason Hayes complaining of back pain. Hicks was sent to physical therapy but her attendance was desultory, and she was referred to Dr. Robert Narotzky in May of

2000. Hicks was informed that physical therapy might help but there was no guarantee and that if surgical treatment was to be considered, she needed to lose weight—at that time, Hicks, who was about 5′4″ tall, weighed approximately 296 pounds—and until she did so, the only other recourse was medication. In March 2001 Hicks underwent gastric bypass surgery. The surgery was a success and by July of 2002, Hicks had lost over 180 pounds. The surgery did not, however, lessen Hicks' pain. Dr. Narotzky gave Hicks pars injections in July and August of 2001 but these, too, were ineffective. On September 17, 2001, Dr. Narotzky performed a one-level fusion of Hicks' lumbar region at L5–S1. The surgery successfully relieved Hicks' back pain.

[¶ 7] In a Final Determination issued on October 2, 2001, the Division denied medical benefits for the fusion surgery stating that the definition of injury does not include: "Any injury or condition preexisting at the time of employment with the employer against whom a claim is made. (Wyoming Statute 27–14–102(a)(xi)(F))." Hicks objected to the Final Determination, and a contested case hearing was held before a Medical Commission panel on June 6, 2002, and continuing on July 11, 2002.

[¶ 8] Hicks called three witnesses during the hearing: Dr. Narotzky, Dr. Tuenis Dow Zondag, and herself. Dr. Narotzky opined that the July 1998 injury necessitated the fusion surgery. He testified that the July 1998 injury aggravated Hicks' preexisting spondylolysis:

Q: Okay. And on the 27th of March [2002], you indicated in a letter written, addressed to me [Hicks' counsel]—are you familiar with that, it's marked as Exhibit A?

A: Yes, I am.

Q: And in that letter, you indicated that you had reviewed Mrs. Hicks—Ms. Hicks' medical record and her treatment to date. ["]It would be my opinion to a reasonable degree of medical probability that her July 1st, 1998 injury while employed by Interim Health Care as a CNA was the source of her back pain and subsequent need for treatment, including surgery done on 9–

17–2001. Although the work injury probably did not cause the L5 spondylolisthesis, it certainly, from the review of all the medical records, did cause her to become much more symptomatic.["]

And is that your professional medical opinion in this particular case?

A: Yes, it is.

Dr. Narotzky's opinion was based solely upon Hicks' representations of continuous back pain from inception of the injury until the fusion surgery:

Q: ... You have given an opinion in writing regarding the causative relationship between the July 1998 accident and the surgery that you ultimately performed last fall. Here you're being asked to testify regarding causation. Is there anything about the physical exam, your physical exams of Ms. Hicks, that would allow you to identify the causative event?

A: No.

Q: Now, you actually performed the surgery. Is there anything about observations during the surgery that would provide information to you regarding the causative event?

A: No.

Q: Now you have had a chance to review at least some of the radiological studies, I believe, that Ms. Hicks has had over the last, oh, five years or so. Is there anything about looking at the x-rays themselves or the MRI scans that allows you to identify the causative event?

A: No, there is not.

. . . .

Q: And, in fact, your opinions regarding causation are in large part, if not entirely, based upon the history provided by your patient, correct?

A: Correct. . . .

. . . .

Q: Okay. So is your opinion in part based upon the fact that you believe that she had constant low back pain from the 1998 injury until you first saw her?

A: Basically that she continued to have symptoms from her injury until the time

that I saw her and until the time that she underwent surgery.

When asked about the extent to which Hicks had accurately related her medical history, Dr. Narotzky responded that he did not recall any disclosure by Hicks of her 1997 injury. However, Dr. Narotzky testified that his opinion was not affected by the failure to disclose because the 1997 injury had completely resolved by the time of the injury in July 1998.

[¶ 9] The second witness called by Hicks was Dr. Zondag, an employee in Dr. Narotzky's practice. Dr. Zondag's opinion paralleled Dr. Narotzky's:

> My opinion is that Irene [Hicks] had a preexisting spondylosis at both the right and the left side at L5 and that this became symptomatic with the injury that she sustained in July of 1998. This symptomatic irritation of the spondylolisthesis never resolved and because it failed conservative care and it seemed to be the origin of pain based upon pars injections and relief and not responding to others, that it was indication for surgical correction so that she could return to a more functional life and return to a more productive one.

> It is my opinion that the episode as she described it to me that happened in the nursing home was the material contributing cause as to why the spondylosis became symptomatic, remained symptomatic and failed conservative treatment and then required a fusion operation.

Dr. Zondag also based his opinion upon Hicks' description of chronic back pain existing from the date of injury until the fusion surgery. Dr. Zondag acknowledged that Hicks did not advise him that she had experienced a work-related back injury in 1997. After considering the medical records relating to the 1997 injury in Hicks' file, Dr. Zondag stood by his opinion that the surgery was related to the July 1998 injury.

[¶ 10] In her testimony, Hicks maintained that she suffered back pain continually from July 1998 until she underwent fusion surgery in September of 2001. Hicks testified that from the time physical therapy ended in April of 1999, until she saw Dr. Hayes in March of 2000, she experienced severe medical problems unrelated to her back injury. Explaining the absence of medical records regarding back treatment during this time period, Hicks implied that the issue of her back pain was still raised during her doctor's appointments but the more immediate concern was her other medical problems. Regarding her medical history, Hicks emphatically stated that she had advised and discussed with Dr. Narotzky the details of her 1997 injury.

[¶ 11] The Division called one witness, Dr. James Ruttle. Dr. Ruttle reviewed Hicks' medical files and reached an opinion on causation contrary to that expressed by Drs. Narotzky and Zondag. He concurred that Hicks' underlying congenital defect was rendered symptomatic by the July 1998 injury. He concluded, however, that the injury responded to treatment and was resolved by the time Hicks completely ceased physical therapy in April 1999. According to Dr. Ruttle, Hicks' congenital spondylolysis, coupled with her morbid obesity, were the cause of her renewed back pain in March of 2000 and subsequent need for fusion surgery. Dr. Ruttle cited the reports filed by Hicks' physical therapists with her treating physician. Those reports noted a positive progression in Hicks' injury. For example:

- 2/16/99—Hicks quoted as saying, "I'm feeling really, really good today." Noted that patient did well with all exercises.

- 2/19/99—Hicks: "I'm doing much better overall and I really feel like I have a ton of energy." Noted that patient did very well with new exercises and was showing improvements in back strength and endurance.

- 2/24/99—Hicks: "I'm doing really pretty good today. I'm still getting the muscle cramps in my calfs [sic] but other than that I'm doing great."

- 3/4/99—Noted that patient was a little sore and that her back was hurting.

- 3/10/99—Hicks reported that she was a little sore in her quads but felt good. Noted that she did very well with all exercises.

- 3/15/99—Hicks stated she was tired on Saturday but felt great on Sunday and on today. Physical therapist reported that Hicks "tolerated increases in weight very well, needs to do one leg at a time on leg curls. [Hicks] asked to do more [exercises], did stepups ... left feeling good."
- 3/25/99—It was noted that Hicks was very motivated and that she felt good. Hicks worked "very hard, looked good" and "she was very motivated wanted to do more."
- 4/2/99—Hicks again reported that she was doing good. The physical therapist commended her on her work habits and good attitude.
- 4/5/99—Hicks: "My back has been feeling good. It feels good now."
- 4/9/99—Hicks reported that she went dancing and her back felt good although she did suffer knee pain afterward. It was again noted that Hicks did very well in workout. This was the last physical therapy session Hicks attended.

Dr. Ruttle concluded from these notes that physical therapy was working for Hicks, and that her injury had demonstrated a discernable improvement over the course of treatment as evidenced by her own statements and the physical therapists' descriptions of her sessions.

[¶ 12] Dr. Ruttle went on to note that after Hicks ceased attending physical therapy in April of 1999, there is no record of her having sought medical treatment for back pain for almost a full year. When Hicks did seek medical attention for back pain in March of 2000, Dr. Ruttle noted that the progress notes from that examination state that Hicks did physical therapy for her back "about a year ago," and the pain was improving but that in the "last 3 weeks back has been hurting and numbness" had appeared. There is an insertion under the "3 weeks" notation that appears to say, "a week ago fell off step." However, the progress note goes on to state that there was "no new trauma" although Hicks had been doing "lots of riding in trucks." Dr. Ruttle believed that the record supported a conclusion that physical therapy had resolved the July 1998 injury,

and that Hicks' underlying congenital defect had become symptomatic again by March of 2000, possibly triggered by her morbid obesity. Thus, he concluded that the back pain for which Hicks sought treatment, and which ultimately required surgery, was not related to her work injury.

[¶ 13] The Medical Commission concluded that Hicks' failure to inform her treating physicians of her 1997 injury, coupled with her sporadic compliance with physical therapy and other medical orders, called her credibility into question. The Medical Commission agreed with Dr. Ruttle's opinion that Hicks' July 1998 injury had resolved through treatment in the spring of 1999. Accordingly, they concluded that Hicks had failed to meet her burden of establishing a causal connection between her work-related injury of July 1998 and her back surgery in September of 2001.

[¶ 14] Hicks filed a Petition for Review of the Medical Commission's Order with the district court, which affirmed. This appeal followed.

## STANDARD OF REVIEW

[¶ 15] The question before us is whether or not Hicks met her burden of proof and established that the injury corrected through surgery in September of 2001 was causally connected with her July 1998 work-related injury. The standards we will apply in our review were recently set out in *Salas v. General Chemical,* 2003 WY 79, ¶¶ 9–11, 71 P.3d 708, ¶¶ 9–11 (Wyo.2003):

> A claimant for worker's compensation benefits has the burden of proving all the essential elements of the claim by a preponderance of the evidence in the contested case hearing. *In Re Worker's Comp. Claim of Johnson,* 2001 WY 48, ¶ 7, 23 P.3d 32, ¶ 7 (Wyo.2001). We recently held that the substantial evidence test is the appropriate standard of review in appeals from Wyoming Administrative Procedures Act contested case proceedings when factual findings are involved and both parties submit evidence. *Newman v. Wyoming Workers' Safety and Comp. Div.,* 2002 WY 91,

¶ 22, 49 P.3d 163, ¶ 22 (Wyo.2002)....
Because both parties presented cases-in-chief, we apply the substantial evidence standard. We afford respect and deference to a hearing examiner's findings of fact if they are supported by substantial evidence. *Haagensen v. State ex rel. Workers' Comp. Div.,* 949 P.2d 865, 867 (Wyo.1997). Our task is to examine the entire record to determine whether substantial evidence supported the hearing examiner's findings. *State ex rel. Wyo. Workers' Comp. Div. v. Waggener,* 946 P.2d 808, 814 (Wyo.1997). We will not substitute our judgment for that of the hearing examiner when substantial evidence supports his decision. *Id.* Substantial evidence is relevant evidence which a reasonable mind might accept in support of the agency's conclusions. *Id.* A hearing examiner's conclusions of law are afforded no special deference and will be affirmed only if truly in accord with law. *State ex rel. Workers' Comp. Div. v. Barker,* 978 P.2d 1156, 1159 (Wyo.1999).

*Hermosillo v. State ex rel. Wyoming Workers' Safety and Compensation Div.,* 2002 WY 175, ¶ 6, 58 P.3d 924, 926 (Wyo. 2002).

An "injury" does not include a "condition preexisting at the time of employment with the employer against whom a claim is made[.]" Wyo. Stat. Ann. § 27–14–102(a)(xi)(F) (Michie 1997). The

burden is upon the claimant to prove that his work accident, not his preexisting condition, caused the necessity for the surgery. *Matter of Corman,* 909 P.2d 966, 970 (Wyo.1996); *Matter of Claim of Fortier,* 910 P.2d 1356, 1358 (Wyo.1996). While aggravation of a preexisting condition is a compensable injury, *Matter of Injury to Carpenter,* 736 P.2d 311, 312 (Wyo.1987), claimant must prove that his employment aggravated, accelerated, or combined with the disease or infirmity to produce the disability for which compensation is sought. *Romero v. Davy McKee Corp.,* 854 P.2d 59, 61 (Wyo.1993); *Lindbloom v. Teton Int'l,* 684 P.2d 1388, 1390 (Wyo.1984).

*State ex rel. Wyoming Workers' Compensation Div. v. Roggenbuck,* 938 P.2d 851, 853 (Wyo.1997). "To prove aggravation of a preexisting injury, the claimant must demonstrate that the 'work effort contributed to a material degree to the ... aggravation ... of the existing condition of the employee.' " *Frazier v. State ex rel. Wyoming Workers' Safety and Compensation Div.,* 997 P.2d 487, 490 (Wyo.2000) (*quoting Lindbloom v. Teton Intern.,* 684 P.2d 1388, 1389–90 (Wyo.1984)) (emphasis omitted).

"[T]he causal connection between an accident or condition at the workplace is satisfied if the medical expert testifies that it is more probable than not that the work contributed in a material fashion to the ... aggravation ... of the injury. We do not invoke a standard of reasonable medical certainty with respect to such causal connection. Testimony by the medical expert to the effect that the injury 'most likely,' 'contributed to,' or 'probably' is the product of the workplace suffices under our established standard ...

[U]nder either the 'reasonable medical probability' or 'more probable than not' standard, [a claimant succeeds] in demonstrating the causal connection by a preponderance of the evidence."

*Hall v. State ex rel. Wyoming Workers' Compensation Div.,* 2001 WY 136, ¶ 16, 37 P.3d 373, 378 (Wyo.2001) (*quoting In re Pino,* 996 P.2d 679, 685 (Wyo.2000)).

Whether the employment " 'aggravated, accelerated, or combined with the internal weakness or disease to produce the disability is a question of fact.' " *Brees v. Gulley Enterprises, Inc.,* 6 P.3d 128, 131 (Wyo. 2000) (*quoting Lindbloom,* 684 P.2d at 1390).

■ [¶ 16] We accord no deference to the district court's conclusions. Our review is conducted as if the appeal had come directly to this Court from the administrative agency. *Robbins v. State ex rel. Wyoming Workers' Safety and Compensation Division,* 2003 WY 29, ¶ 15, 64 P.3d 729, ¶ 15 (Wyo.2003).

## DISCUSSION

▮ [¶ 17] Hicks complains that several of the Medical Commission's findings were contrary to the record. Initially, Hicks takes issue with the Medical Commission's determination that she was not a credible witness. The Medical Commission cited Hicks' failure to inform Drs. Narotzky and Zondag of her prior back injury in 1997, along with her noncompliance with the physical therapy requirements, as the basis for its determination. Hicks insists that she informed her treating physicians of all relevant details related to her injury and provided them with all pertinent medical records, including those pertaining to her 1997 injury. She dismisses the Medical Commission's reliance on this finding by pointing out that both Drs. Narotzky and Zondag testified that the presence of the 1997 injury did not affect their medical opinion that the surgery was causally connected to the 1998 work-related injury. On the issue of her attendance at physical therapy sessions, Hicks asserts that the Medical Commission ignored evidence of legitimate reasons for her absences, including the illness of a family member, conflicting appointments for her children, and car trouble. Particularly, Hicks stresses her testimony that the physical therapy caused her pain and discomfort. She also claims that the Medical Commission misstated the number of times she was actually absent from physical therapy. Accordingly, Hicks concludes that the Medical Commission's findings are simply not relevant to her credibility.

[¶ 18] The Medical Commission, as the trier of fact, is assigned the task of determining the credibility of the witnesses and weighing the evidence. We will overturn its determinations only if they are contrary to the great weight of the evidence. *Hurley v. PDQ Transport, Inc.*, 6 P.3d 134, 138 (Wyo. 2000) (citing *Helm v. State ex rel. Wyoming Workers' Safety and Compensation Division*, 982 P.2d 1236, 1237 (Wyo.1999)). The record does not support Hicks' arguments. Dr. Narotzky and Dr. Zondag testified unequivocally that Hicks did not inform them of her 1997 injury. That this information was not considered material by the doctors in the formation of their opinions on causation is

established only through hindsight. Hicks had a duty to affirmatively disclose all relevant medical information related to her claim for benefits, including any prior or preexisting injuries. We will not disturb the Medical Commission's determination that Hicks' failure to timely disclose pertinent medical information was relevant to an assessment of her credibility as a witness.

▮ [¶ 19] Similarly, we find no error in the Medical Commission's citation of Hicks' failure to comply with her treating physician's medical orders as a basis for doubting her credibility. A letter from Hicks' physical therapist notifying her treating physician of her termination for noncompliance supports the Medical Commission's determination that Hicks missed over half of the sessions scheduled in January of 1999. The record also fails to support Hicks' claim that physical therapy was causing her pain. The physical therapy notes only contain complaints from Hicks about general soreness and the aches and pains usually associated with the rehabilitation of an injury. Indeed, the notes indicate that Hicks' back injury was "feeling good" and that she was progressing on her rehabilitation. Simply put, the record does not support Hicks' arguments. Faced with a conflict between Hicks' testimony and the record, the Medical Commission made a determination that the independent, contemporaneous notes of the physical therapist were more credible. We cannot say that the Medical Commission's determination was incorrect.

▮ [¶ 20] Nevertheless, Hicks argues that she showed by a preponderance of the evidence that there was a causal relationship between her work-related injury of July 1998 and the necessity for surgery in September of 2001. Hicks' position is predicated on the opinions of Drs. Narotzky and Zondag. She insists that their opinions are sufficient to meet her burden of proof. Hicks dismisses the Medical Commission's reliance upon Dr. Ruttle's opinion. She points out that Dr. Ruttle's opinion was rendered after a fifty-minute review of her medical records. That, she contends, is not an investigation sufficient to establish a reliable medical opinion,

and the Medical Commission erred in relying upon it.

[¶ 21] Hicks' injury presented complex medical issues related to causation that would normally signify a need for the trier of fact to rely on the technical medical knowledge of an expert. A finder of fact is not necessarily bound by an expert's medical testimony. *Morgan v. Olsten Temporary Services,* 975 P.2d 12, 16 (Wyo.1999) (citing *Forni v. Pathfinder Mines,* 834 P.2d 688, 693 (Wyo.1992)).

> It is the hearing examiner's responsibility, as the trier of fact, to determine relevancy, assign probative value and ascribe the relevant weight given to medical testimony. [*Clark v. State ex rel. Wyoming Workers' Safety and Compensation Div.,* 934 P.2d 1269, 1271 (Wyo.1997) ] (*citing Matter of Workers' Compensation Claim of Thornberg,* 913 P.2d [863] at 867 [Wyo. 1996] ). "The hearing examiner [is] also in the best position to judge the weight to be given to the medical evidence." [*Matter of Goddard,* 914 P.2d 1233, 1237 (Wyo.1996); *Latimer v. Rissler & McMurry Co.,* 902 P.2d 706, 711 (Wyo.1995) ] "The trier of fact may disregard an expert opinion if he finds the opinion unreasonable or not adequately supported by the facts upon which the opinion is based." *Clark,* 934 P.2d at 1271.

*Morgan,* 975 P.2d at 16.

[¶ 22] Drs. Narotzky and Zondag's opinions on causation were not based upon any medical evidence; rather, they were derived exclusively from Hicks' representations that she had suffered from constant back pain from the inception of her injury in July of 1998 until her surgery in September of 2001. Dr. Ruttle based his opinion that there was no causation on Hicks' medical records. As noted above, Hicks' physical therapy notations describe improvement in her back pain, and that she was doing well with the exercises. The record contains a gap from April of 1999 until March of 2000 with no evidence of any medical treatment for back pain. When Hicks did return to a doctor complaining of back pain in March of 2000, the doctor's contemporaneous notes state that, in the prior three weeks, Hicks had experienced back pain and numbness. The surgical fusion

Hicks eventually underwent was at the same position that her congenital spinal defect was located. From these facts, Dr. Ruttle concluded that Hicks' 1998 injury had probably been resolved through physical therapy and that the pain she began feeling again in 2000 was her congenital defect becoming symptomatic, probably because of her morbid obesity.

[¶ 23] The problem with Hicks' argument is that she relies entirely upon her own testimony. This calls into question the reliability of her expert witnesses' opinions on causation since those were based upon their belief in her assertions of uninterrupted back pain. However, the Medical Commission did not find Hicks to be a credible witness, a finding we have not disturbed. Hicks' testimony is not consistent with other parts of the record, as illustrated by the contradiction between the notes from her physical therapists and Hicks' assertions that the sessions caused her pain.

> If the hearing record demonstrates ambiguities or inconsistencies that require weighing the evidence and assessing the credibility of witnesses, the trier of fact has the sole responsibility for those functions. They are not the prerogative of the reviewing court. * * * In this regard, we have said, "[f]urthermore, '[w]hen the inconsistencies in the evidence and the claimant's testimony make it impossible for the hearing examiner to determine whether the accident arose out of [and] in the course of his employment, the claimant has failed to sustain his burden.' "

*Morgan,* 975 P.2d at 15 (citations omitted). Under these circumstances, there is substantial evidence to support the Medical Commission's conclusions. Hicks failed to prove by a preponderance of the evidence that her surgery was causally related to her work injury. In *Boyce v. State ex rel. Workers' Safety and Compensation Division,* 2005 WY 9, —— P.3d ——, 2005 WL 221533 (Wyo.2005), we held that when a "party charged with the burden of proof has failed to meet that burden, we review the case under the arbitrary, capricious, abuse-of-discretion, or otherwise-not-in-accordance-with-law standard." *Id.,* ¶ 6. In this case, the Medical Commission

found that Hicks had failed to meet her burden of proof but it also made the factual finding that her back injury was not caused by her work. When the trier of fact's conclusion that the claimant has failed to meet his or her burden of proof is coupled with a factual finding that the injury was not work-related, we will apply the substantial evidence test.

[¶ 24] Finally, Hicks contends that she was denied due process. Specifically, she claims that the Medical Commission refused to allow her to produce evidence showing that the Division had continued to pay her benefits for her July 1998 injury, after her back injury had allegedly resolved in the Spring of 1999. Hicks argues that if her injury had, in fact, resolved itself or if the surgery was not related to the July 1998 injury, then the Division would not have continued to pay her benefits.

[¶ 25] We have consistently stated that an uncontested award of benefits is not a final adjudication that precludes the Division from challenging future benefits, and that, accordingly, a claimant must prove that she was entitled to receive benefits for all outstanding claims despite any previous awards for the same injury. *Newman v. State ex rel. Wyoming Workers' Safety and Compensation Division*, 2002 WY 91, ¶ 27, 49 P.3d 163, ¶ 27 (Wyo.2002) (quoting *Hall v. State ex rel. Wyoming Workers' Compensation Division*, 2001 WY 136, ¶ 14, 37 P.3d 373, ¶ 14 (Wyo.2001)); *see also Tenorio v. State ex rel. Wyoming Workers' Compensation Division*, 931 P.2d 234, 239 (Wyo.1997). In her brief, Hicks does not address how her argument was proper in light of this well-established principle. Even if we assumed that the Medical Commission prohibited Hicks from presenting this evidence,[1] it appears that Hicks' argument is not appropriate. Hicks has failed to present us with a cogent argument supported by authoritative citation. We do not consider such arguments. *Dobson v.*

*Stahla*, 2003 WY 6N, ¶ 5, 63 P.3d 209, ¶ 5 (Wyo.2003).

[¶ 26] Affirmed.

---

1. Hicks neglects to mention in her brief that she inserted into the record an exhibit detailing all of the benefits paid by the Division arising out of her July 1998 work-related injury. There is nothing in the record indicating that Hicks attempted to make any argument before the Medical Commission based on this evidence.